KANSAS CITY, Missouri, Appellant,

v.

GRAYBAR ELECTRIC COMPANY, INC., Respondent.

No. 57549.

Supreme Court of Missouri, En Banc.

Sept. 11, 1972.

Rehearing Denied Oct. 9, 1972.

Herbert C. Hoffman, City Counselor, George L. DeBitetto, Assoc. City Counselor, Kansas City, for appellant.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.

SEILER, Judge.

Kansas City brought this suit to recover additional occupational license taxes for the years 1962 through 1966. The trial court, sitting without a jury, concluded that the scope of the ordinances under consideration did not levy a tax computed on the basis of gross receipts resulting from the sales in question. The city appealed directly to this court which determined, in Kansas City v. Graybar Electric Co., Inc. (Mo.Sup.) 454 S.W.2d 23, that the issue involved was as to the correctness of the interpretation by the trial court of the coverage of the ordinance, that no constitutional issues were involved and, therefore, this court did not have original appellate jurisdiction. The case was transferred to the Kansas City Court of Appeals (now the Missouri Court of Appeals, Kansas City District) which affirmed the decision of the trial court. The case was then by our order, on motion of plaintiff, transferred here because of the general interest and importance of the question involved, Sec. 10, Art. V, 1945 Constitution, V.A.M. S., and will be decided as if here on original appeal. We reverse with directions to enter judgment for the plaintiff.

■ The license tax in question is imposed upon the privilege of conducting the business of merchant in Kansas City. The issue is whether or not the gross receipts derived from direct shipment or "drop" shipment sales, which were solicited outside the city and were delivered without the goods ever entering the city, are includable in the gross receipts upon which the occupational license tax is computed. Whether by statute[1] or by charter[2], the city has the necessary authority for a tax of this type and has proceeded by ordinance[3], basing the tax on annual gross receipts.[4]

Defendant is a wholesale dealer in electrical equipment and maintains a district office and sales manager in Kansas City for its nationwide business which is headquartered in New York. The Kansas City district includes several other states and 31 counties in Missouri. Defendant's sales consist of warehouse sales, counter sales, and direct sales.

The sales for which the tax has not been paid, and which are the center of controversy here, are the direct shipment sales or, as the city prefers to refer to them, the "drop" shipment sales. These sales are procured by salesmen who call on customers in parts of Missouri other than Kansas City. The order is signed by both the customer and the salesman at the customer's place of business, transmitted by telephone or through the mails to the Kansas City office, and the shipments are sent from points outside Missouri directly to the customer without ever entering Kansas City. The record does not show where the sale is actually consummated, but that fact is not determinative of the issue. The Kansas City office keeps the sales, accounting and payroll records, conducts credit investigations, issues billing notices and receives payment from direct or "drop" shipment sales, disseminates sales catalogs, promotional material and price indexes, and approves or rejects credit for its Missouri customers. Additionally, the salesmen are paid a salary or a commission or both by the Kansas City office, depending on their actual sales, based on their direct shipment sales activities. Their expense accounts are paid through the Kansas City office, desks are furnished for their use when they are in Kansas City, there are meetings facilities there and sales meetings are conducted periodically in the Kansas City office.

1. Sec. 92.040, V.A.M.S., pertains to cities with over 300,000 inhabitants and reads in pertinent part: ". . . All such cities, for city and local purposes, are hereby authorized to license, tax and regulate the occupation of merchants and manufacturers, and may graduate the amount of annual license imposed upon a merchant or manufacturer in proportion to the sales made by such merchant or manufacturer during the year next preceding any fixed date."

2. Art. I, Sec. 1 of the Charter of Kansas City states: "Subject only to the necessary extent of the limitations imposed by the Constitution and laws of the United States and the State of Missouri, it shall have power: . . . (57) (Trades, businesses, professions, callings.) To license, tax and regulate any and every person, firm, associate or corporation in anywise engaged in the occupation, business, trade, pursuit, profession, calling, employment, vocation, avocation, or practice of . . . merchant . . . "

3. Sec. 30.260, Rev.Ord.Kansas City, reads: "Every corporation, company . . . engaged in any business, occupation, pursuit . . . in this article and chapter specified shall procure and pay for a license therefor from the city . . . "

4. Sec. 30.1740, Rev.Ord.Kansas City, reads: "Merchant—wholesale or retail.— One dollar per $1,000 of annual gross receipts . . . "
"Gross receipts" is defined by Sec. 30.-2850, Rev.Ord.Kansas City, to mean ". . . twelve times the average monthly gross receipts for the time during which any business in question shall have been conducted . . . "
In Laclede Gas Co. v. City of St. Louis (banc), 363 Mo. 842, 253 S.W.2d 832, 835, where the ordinance called for a license of 5% "of the gross receipts from such business", we said, ". . . In its usual and ordinary meaning 'gross receipts' of a business is the whole and entire amount of the receipts without deduction . . . "

Defendant excluded the gross receipts from the direct shipment sales from the computations to determine its occupational license tax liability and the city filed this suit after a periodic audit uncovered this fact. The defendant presented no evidence. The trial court found for defendant, concluding that a reasonably strict construction of the ordinance did not authorize the computation of the merchant's license tax on gross receipts derived by the taxpayer from outside the city and further finding that the receipts in question were not attributable to defendant's occupation of merchant carried on within the city. In so doing, the trial court was in error.

■ The general rule with regard to occupational license taxes is well stated in 53 C.J.S. Licenses § 30, p. 573: ". . . The subject matter of a business or occupation tax, however, is not the sale, even though sales of the character specified are utilized as a measure of the tax to be assessed, and are essential to a determination that a person is engaged in a taxable occupation. It is not a privilege tax on purchasers, or a tax on the property or income. It is on the privilege or occupation, that is, on the person for the privilege of engaging in the business or occupation designated . . ." Such is the purpose and intent of the Kansas City ordinance. Gross receipts are merely a means to calculate the occupational license tax; what is being taxed is the privilege of doing business in Kansas City. Graybar Electric was clearly doing business in Kansas City. The vast majority of incidents relating to the direct shipment sales occurred in Kansas City or under the supervision of the employees in the Kansas City office. The trial court erroneously read language of limitation into the ordinance which was not present.

Mention is made by counsel of two cases decided by Division Two of the court, May Department Stores Company v. University City (Mo.Sup.), 458 S.W.2d 260 and Food Center of St. Louis v. Village of Warson Woods (Mo.Sup.), 277 S.W.2d 573, stressing that in the May Department Stores case, the court, at 458 S.W.2d 262, referred to language in the Food Center case (without specifying the language) ". . . which cannot be reconciled with the result reached in this case, and insofar as it conflicts with the result here reached that language is disapproved."

We do not believe either case is decisive of the case before us, because of the difference in the facts between those cases and the present case. In the Food Center case, the result of the case was that the operator of the supermarket had to pay a merchant's license tax to both of the villages in which the store was located (the store building was located partly in one village and partly in the other), based on the gross receipts for the entire store. In the May Department Stores case, the store operator, whose store also was partly in one city and partly in another, was held to pay each city only on the basis of the gross sales made in that city. The decision was on the basis that this was all the city ordinance in question called for. The court was not called upon to decide the question of whether the ordinance could validly have included in the tax base the gross sales of the store, both inside and outside the city limits.

In the case before us, there is no question of defendant's being asked to pay a merchant's license to two cities, each based on the total gross receipts of sales in the two combined. Defendant's sales office is located entirely in Kansas City, not astride the boundary between two municipalities. The gross receipts in question are fairly attributable to its Kansas City sales office, not to two sales office sites, one in one city and one in another. It is evident there is a most substantial tax nexus in Kansas City, far beyond what might exist anywhere else in the Kansas City district's territory, between defendant's drop shipments sales and its Kansas City sales office. There is no real competing nexus in another location, contrary to the situation

in the Food Center and May Department Stores cases.

Cedar Hill Cemetery Corp. v. District of Columbia, 75 U.S.App.D.C. 84, 124 F.2d 286 involved an occupational privilege tax measured by a percentage of gross receipts. The case involved a Maryland corporation which sold cemetery lots in Maryland near the District of Columbia. Cedar Hill's control records were kept in Maryland, all offers were sent to Maryland for acceptance, ninety-five percent of the offers were signed in Maryland, the shareholder meetings were held in Maryland, and the corporation paid its income and property taxes in Maryland. More than fifty percent of the lot purchasers were District of Columbia residents. The corporation maintained a sales office in the District with a sales manager and twenty-five salesmen. The records and contracts were stored in the District, the lots were paid for in the District, checking accounts were maintained there, and advertisements were taken out in the District of Columbia telephone book. The court held that a tax on the privilege of doing business in the District of Columbia may be measured by the gross receipts of all sales even if part of the business takes place outside the District.

Triplett v. City of Chester, 209 S.C. 455, 40 S.E.2d 684, involved collection of a license tax based on gross income from a general contractor who had never done any actual construction work within the city limits of Chester, but whose central office was there. The court in Triplett said at 685: ". . . It is the privilege of doing business within the municipality that is sought to be taxed. The administrative and executive work, an indispensable phase of respondent's business, was conducted in the office established, maintained and operated in the City . . . This portion of his business enjoyed all the advantages afforded by the municipal government of Chester to any other business conducted within its corporate limits . . . It frequently happens that there is a business located within a municipality that does not do all of its business within the corporate limits of such town or city."

Continuing, the court said at 40 S.E.2d 1. c. 686: "The right of a municipal corporation to impose a tax of this kind upon a corporation or business conducted within the city limits, although a portion of the business is carried on or the transaction is factually completed outside such municipality, is generally recognized . . ."

City of Hammond v. Orkin Exterminating Co. (La.App.), 248 So.2d 25, involved an occupational license tax on gross receipts. The city contended that Orkin should pay the tax based on gross receipts from the five parishes served by the Hammond office but which were outside the city of Hammond. Orkin did business by written contract which was usually entered into at the residence of the customer and signed by the salesman. The contract was approved in either Hammond or Atlanta, Georgia, processed through the Hammond office, and the completed contracts were billed either from Hammond or Atlanta. Orkin contended that since the service was performed outside Hammond and the contracts were made outside Hammond, the city had no authority to tax them. The court rejected this argument and held that the tax was valid and included the gross receipts from sales made in the five parishes.

◾ The other issue presented for review is whether or not the doctrine of collateral estoppel applies in the case at bar. We agree with the trial court that the defense of collateral estoppel was not proved, nor are we able to conclude what specific fact issues were decided in the 1961 litigation between the same parties regarding this same tax for the years 1957 through 1961.[5]

---

5. The trial court made the following conclusion of law as to the 1961 litigation:

"The doctrine of collateral estoppel is relevant, is applicable, but was not

■ The basic rule of collateral estoppel is stated in Abeles v. Wurdack (Mo.Sup.), 285 S.W.2d 544, 546: ". . . A judgment between the same parties on a different cause of action is binding as to the facts actually decided, and necessarily determined in rendering the judgment, under what is called estoppel by verdict . . ." See also Reis v. La Presto (Mo.Sup.), 324 S.W.2d 648, 653; Smith v. Preis (Mo.Sup.), 396 S.W.2d 636, 640.[6] As already noted, in the 1961 suit the trial court did not make any specific findings of fact or conclusions of law, but merely found, generally, for defendant.

In the 1961 suit defendant pleaded payment, statute of limitations, and invalidity and non-coverage of the ordinances. The evidence from the city was that the ordinances were in effect, an audit was made, deficiencies found, and the city asked for judgment. The city put on no evidence as to the method of operation of defendant. Defendant had one witness, the operating manager of the district, who testified as to the district boundaries and some of the details of defendant's method of operation. On this record, the court entered judgment for defendant without saying why. From this general judgment it is impossible to say that any fact issue was resolved against the city which necessarily requires a judgment against the city in the present case. The court could have decided the ordinance did not apply or that the city failed to carry its burden of proof to show a sufficient nexus between the outside sales of the Kansas City district office. There is nothing necessarily inconsistent between the 1961 judgment and the facts found in the present case.

proved. An identity exists of the parties, general subject matter and transactions. From a consideration of the transcript of the testimony of the witnesses in Cause No. 640,501, filed in 1961, (Defendant's Exhibit 21), and of the pleadings, it is not discernible whether the evidence was responsive to the pleadings, and therefore, we cannot say which facts were conclusively adjudicated . . . "

The judgment of the trial court is reversed with directions to the trial court to enter judgment for plaintiff in the amount of $10,051.08 as of the date of the original judgment in this cause.

Judgment reversed with directions.

All of the Judges concur.

6. We are not dealing with res judicata because: ". . . The tax for each year is a separate and distinct transaction and each action for collection is a different cause of action from those of prior years . . . . " In re Breuer's Income Tax, 354 Mo. 578, 581, 190 S.W.2d 248, 250.