UNITED STATES of America, Appellee,

v.

Merrill KARLEN, Appellant.

No. 80–1279.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1980.

Decided April 9, 1981.

Wally Eklund, Gregory, S. D., for appellant.

Robert D. Clark, Dept. of Justice, Washington, D. C., for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Merrill Karlen appeals from a final judgment entered in the District Court [1] for the District of South Dakota awarding the United States (the Government), as trustee for the Lower Brule Sioux Tribe (the Tribe), $32,845 as damages for the breach of a lease agreement and for animal trespass.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

For reversal Karlen argues that the district court erred in (1) granting partial summary judgment in favor of the Government, (2) giving improper damages instructions to the jury, and (3) refusing to compel production of certain discoverable documents. For the reasons discussed below, we affirm the judgment of the district court.

In 1970, Karlen entered into a contract to lease from the Tribe approximately 8,290 acres of land in Lyman County, South Dakota, for a five-year term from April 16, 1970, to April 30, 1975, for an annual rate of $18,146. The contract was a standard Bureau of Indian Affairs (BIA) lease form, to which sixteen supplemental clauses had been added. Supplemental Clause 8 allowed Karlen to graze either 422 cow units (cow plus calf) on a yearly basis or 644 cow units on a six-month basis.[2] Supplemental Clause 10 allowed Karlen to harvest hay for feeding purposes.[3]

Each summer Karlen harvested hay from the leased premises and removed it to another ranch where he kept stock. In the fall of 1974, after the 1974 haying operations came to the attention of the Tribe, the local BIA superintendent cancelled Karlen's lease for excessive hay cutting and assessed as damages the sum of $57,325. 25 C.F.R. § 131.14 (1980). Karlen requested a formal hearing. The assessment was affirmed by the area director of the BIA on January 30, 1975, without a formal hearing.

On December 6 and 7, 1976, a de novo hearing about the lease cancellation was held before an administrative law judge (ALJ). In a full written opinion dated August 15, 1977, the ALJ held that the Clause 10 right to harvest hay was limited by the Clause 8 stocking provision to the amount of hay necessary to feed 422 cow units on a yearly basis.[4] In essence, the ALJ found, "[T]o construe the lease as allowing a lessee to use up all of his cow units by grazing and, in addition, to allow him to cut unlimited amounts of hay, take it off the property and feed additional cattle, simply does not make sense." Although the ALJ affirmed cancellation of the lease because of Karlen's 1974 breach, he had no jurisdiction to calculate or enter a judgment for damages. The decision of the ALJ was affirmed by the Interior Board of Indian Appeals. 6 IBIA 181 (Nov. 21, 1977). Karlen apparently did not seek judicial review of the administrative decision.

On March 16, 1979, the Government on behalf of the Tribe filed an amended complaint in district court alleging excess haying in 1973 (count I), excess haying in 1974 (count II), damages to the fixtures and buildings (count III), animal trespass on August 1, 1978 (count IV), and animal tres-

---

2. Supplemental Clause 8 contained five distinct stocking options: 422 cow units for a year, 644 cow units for six months, 753 cow units for five months, 562 yearlings for a year, or 844 yearlings for six months. At the hearing, the Tribe claimed that Karlen bid for the lease on the option of 422 cow units on a yearly basis, and the ALJ agreed. At trial, the Government claimed that Karlen chose the stocking plan that permitted him to graze 644 cow units on a six-month basis, while Karlen claimed that he chose the stocking option that permitted him to graze 422 cow units on a yearly basis. Which stocking plan he chose was a jury issue.

3. Supplemental Clause 10 provided:

Native hay and substitute feed crops may be harvested for feeding purposes only. Native hay must not be cut on the same area in consecutive years unless an unusual wet year will permit it without causing damage to the grass growth. In this instance the Lessee must obtain written permission to cut the same area from the Lessor and Superintendent.

Karlen testified that he negotiated for unrestricted haying privileges and that Clause 10 was added to reflect that part of the bargain. Karlen moved his stock often, however; and the evidence was equally susceptible to the interpretation that Karlen wanted to be sure that he could still feed his stock hay from the leased premises when they were on other property.

4. To put this relationship into perspective, the complaint alleged that, each year, Karlen was entitled to use a total of approximately 47.11 tons of hay for 644 cow units (calculated at 20 pounds per head per day). See note 2 supra. A National Resource Specialist testified at the hearing that in 1974 Karlen cut approximately 2,340 tons. Therefore, Karlen cut as much as 50 times the amount provided for in Clause 10, in addition to the amount actually consumed by 644 cow units while on the leased premises.

pass on several days in August and September, 1978 (count V). Subsequently, the Government moved for partial summary judgment on the issue of interpretation of the lease and the issue of excess haying in 1974. The district court held that Karlen was collaterally estopped from relitigating those issues. No evidence was put in on count III. Therefore, the case went to the jury on the 1973 excess haying count, the animal trespass counts, and amount of damages for the excess haying in 1973 and 1974.

The jury returned a verdict of $32,325 for excess haying in 1973 and 1974, plus $1,560 for animal trespass in 1978. The district court reduced the animal trespass award from $1,560 to $520 and entered judgment for the Government in the amount of $32,845.

## I. *Issue Preclusion*

Karlen contends that the district court erred in granting summary judgment on count II for excess haying in 1974. The district court based its ruling on the ALJ's determination that Karlen had breached the lease in 1974 by cutting a quantity of hay in excess of the amount authorized under Supplemental Clause 10.

■ Karlen argues first that application of the doctrine of res judicata was not appropriate because the Government raised new issues and a new cause of action that had not been before the ALJ. This argument, however, neglects the distinction between res judicata (or claim preclusion) and collateral estoppel (or issue preclusion). The Supreme Court has stated the distinction as follows:

[U]nder the doctrine of res judicata a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Whether hay cutting in 1974 exceeded the contractual limit was the crux of both the administrative lease cancellation proceeding and count II of the judicial action for damages. Therefore, the fact that the second action included new issues and a different cause of action did not in itself make issue preclusion inappropriate.

■ Karlen argues second that this is not an appropriate case for partial summary judgment because the prior determination was made by an administrative agency. It is true that the doctrines of res judicata and collateral estoppel are not applied as rigidly to administrative actions as to judicial proceedings. *United States v. Cappaert,* 508 F.2d 313, 322 (9th Cir. 1974), *aff'd,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976). But the Supreme Court has made it clear that these doctrines do apply to appropriate administrative actions.

Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

*United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966) (footnotes and citations omitted); *see generally* Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation,* 46 Geo.Wash.L.Rev. 65 (1977). It follows that administrative rulings on questions of law which relate to contracts are not binding on courts which later review such contracts. Whether a contract is ambiguous is a question of law. *Steele v. McCargo,* 260 F.2d 753, 757–58 (8th Cir. 1958). Where a contract is ambiguous, its interpretation is a question of fact. *Fitch v. Doke,* 532 F.2d 115, 116–17 (8th Cir. 1976).

■ Here, the ALJ ruled as a matter of law that the lease contract was ambiguous. The district court would not have been bound by that ruling, but it specifically upheld the ALJ's determination on that issue of law. The ALJ treated construction of the ambiguous contract as an issue of fact, and again the district court approved that treatment. The ALJ treated the issues correctly, and the district court applied the correct scope of review. Therefore, the fact that the prior determination was made by an administrative agency did not in itself make issue preclusion inappropriate.

■ Karlen contends third that this was not an appropriate case for an offensive use of collateral estoppel. Collateral estoppel is essentially a defensive doctrine, but it may be used offensively where the plaintiff is able to rely on a previous judgment against the defendant. The Supreme Court indicated that offensive collateral estoppel would not be appropriate if there would be unfairness to the defendant because (1) the defendant had no strong incentive to litigate the prior lawsuit, (2) the judgment relied on was inconsistent with one or more previous judgments in favor of the defendant, or (3) the second action afforded the defendant procedural opportunities unavailable in the first action that could readily cause a different result. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31, 99 S.Ct. 645, 651–652, 58 L.Ed.2d 552 (1979); *Oldham v. Pritchett*, 599 F.2d 274, 278–81 (8th Cir. 1979). Karlen complains that a judicial hearing would have afforded procedural advantages.

■ In particular, Karlen claims that he was denied an adequate opportunity to litigate in the administrative hearing because two members of the tribal council who had participated in the negotiations on terms of the lease did not appear at the hearing in response to his subpoena. However, Karlen could have secured the two witnesses' testimony. Although an ALJ of the BIA may issue a subpoena, 43 C.F.R. § 4.26(a) (1980),

the ALJ does not possess the equitable power to punish the failure to appear with a citation for contempt of court. *Id.* § 4.1 *et seq.*; 5 U.S.C. § 555(d). Upon petition, however, the district court will issue a subpoena under Rule 45 of the Federal Rules of Civil Procedure for attendance at an administrative hearing. *See, e. g., United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964) (IRS); *FTC v. Atlantic Richfield Co.*, 185 U.S.App.D.C. 229, 567 F.2d 96, 106 n.22 (1977) (FTC); *Lynn v. Biderman*, 536 F.2d 820, 823–24 (9th Cir.) (HUD), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); *United States v. Feaster*, 376 F.2d 147, 149 (5th Cir.) (National Mediation Board), *cert. denied*, 389 U.S. 920, 88 S.Ct. 237, 19 L.Ed.2d 265 (1967). Then the district court can use its contempt power under Rule 45(f) to compel appearance of the witness. *See* 5A Moore's Federal Practice ¶ 45.02[2] (2d ed. 1980). Karlen could have but failed to petition the district court for an order compelling the witnesses' appearance under penalty of contempt of court.[5] There was no procedural advantage available at the judicial proceeding that had not been available at the administrative proceeding. Therefore, the fact that this was an offensive use did not in itself make issue preclusion inappropriate.

■ The common element underlying all Karlen's arguments against the application of collateral estoppel is that the first proceeding did not provide a full and fair opportunity to litigate.

In the context of the immediate case, the meaning of "full and fair opportunity" is dependent on whether [Karlen was] denied procedural, substantive, or evidentiary opportunities to be heard on the issue of [the construction of the lease agreement and the excessive hay cutting in 1974]. Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged.

**5.** Nor did he move for a continuance of the hearing on account of the failure of those witnesses to appear.

*Oldham v. Pritchett, supra,* 599 F.2d at 279 (prior admiralty proceeding) (citations omitted); *see also Gerrard v. Larsen,* 517 F.2d 1127 (8th Cir. 1975). We have already determined that Karlen suffered no procedural disadvantage. We further find no substantive or evidentiary restrictions in the administrative proceeding. During the two-day hearing, Karlen, with the assistance of counsel, testified extensively and presented documentary evidence on the representations made by the parties and their respective understandings of the contract. He argued that testimony of the two witnesses about the negotiations was necessary in order to interpret the contract, but he did not petition the district court to issue a subpoena or make an offer of proof as to what their testimony would have been. He did, however, examine the BIA area realty officer, who had been present during part of the lease negotiations, as to his recollection of the discussion about hay cutting. *See* note 3 *supra.* Notwithstanding the two witnesses' failure to appear, Karlen had an adequate opportunity to litigate. The issue was the same. He was represented by counsel. The potential $57,325 assessment in damages gave him strong incentive to litigate. And he put in evidence to support his interpretation of the contract. Moreover, it was foreseeable at the time of the administrative hearing that facts subject to collateral estoppel could be important in future litigation. *See, e. g., Johnson v. United States,* 576 F.2d 606, 614–15 (5th Cir. 1978), *citing Mosher Steel Co. v. NLRB,* 568 F.2d 436, 440 (5th Cir. 1978). The issue was actually litigated and determined. The ALJ, applying the proper standards, simply decided the issue against Karlen. We find no abuse of discretion in the district court's allowance of the use of offensive collateral estoppel.

## II. *Damages Instructions*

■ Karlen contends that the district court erred in giving instructions 16 and 17 which permitted an allowance of damages to the Government without proof of any pecuniary loss or injury to the land. This contention is based on the erroneous assumption that the Government sued him on a theory of waste, or damage to real property. In fact, the complaint clearly reveals that this was an action for damages for excess hay cutting, in violation of the lease agreement. The correct measure of damages for unauthorized harvesting or conversion of crops is the fair market value of the mature crops, less the reasonable cost of harvesting them. *Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38, 43–44 (1975); *Bruha v. Bochek,* 76 S.D. 131, 74 N.W.2d 313, 315 (1955). This contention fails.

■ Karlen also complains that instruction 18 allowed the jury to speculate on the amount of hay each animal required per day in determining how much the hay harvested exceeded the terms of the lease. The Government put in statistical evidence on this foundation element, and Karlen's counsel cross-examined at length. Therefore, the damages were not so speculative, remote or conjectural as to prevent recovery. *See Swenson v. Chevron Chemical Co., supra,* 234 S.W.2d at 43.

■ Finally, Karlen contends that the district court erred in refusing to instruct the jury that the Tribe had a duty to mitigate its loss. Although Tribe members saw Karlen harvesting hay, there was no evidence that the Tribe did discover or should have discovered earlier that Karlen's hay cutting was in excess of the amount allowed by the lease. Nor was there evidence that, once the violation was discovered, the Tribe delayed in bringing the violation to Karlen's attention. Therefore, the "doctrine of avoidable consequences" was inapplicable. *Cf. State Highway Comm'n v. Pinney,* 84 S.D. 311, 171 N.W.2d 68 (1969) (eminent domain).

## III. *Limited Discovery*

Karlen contends that the district court erred in refusing to compel production of discoverable documents.

On November 27, 1979, a subpoena duces tecum was served on Michael Jandreau, as the chairman of the Tribal Council, and

other Tribe members calling for them to appear two days later to have depositions taken and to bring the following with them:

[A]ll documents, papers, business records, diaries, cancelled checks, pertaining to the cutting, stacking, moving or storage of hay upon the ranch known as the "Gifford Ranch" from January 1, 1972 to the present date [November 26, 1979]. (2) Copies of Lower Brule Sioux Tribe Council minutes from January 1, 1972 to the present date. (3) Copies of all leases entered into between the Lower Brule Sioux Tribe and individuals other than Merrill Karlen whereby all or portions of the "Gifford Ranch" were leased by the Lower Brule Sioux Tribe between November 1, 1972 and the present date [November 26, 1979].

Jandreau appeared but on advice of counsel refused to answer questions. No documents were produced.

On December 3, 1979, the court granted the Government's motion for partial summary judgment on interpretation of the lease and the breach in 1974.

On December 7, 1979, private counsel for the Tribe filed a motion for a protective order on the grounds that the partial summary judgment made the subpoena moot and that the documents contained privileged matter. On December 11, the Government filed a motion for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure on the ground that the subpoena had been overly broad and calculated to harass the Tribe. The Government asked that the subpoena be limited to the remaining subject matter of the lawsuit. The Government also moved to have the subpoena quashed for failure to give notice to a party to the action, namely the Government itself.

On December 14, Karlen moved to have Jandreau held in contempt. On December 19, 1979, the hearing on the contempt motion was held. Following the hearing, the district court limited the discovery order to those portions of the Tribal Council minutes for 1973 and 1974 relating to the Karlen lease and those for 1978 relating to the animal trespass violations.

Karlen relies on Rule 26(b) of the Federal Rules of Civil Procedure which defines the scope of discovery as follows: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ....." Karlen states generally that some tribal council minutes which were not received into evidence would have been relevant to his defense as well as to damages.[6]

Both the Government and the Tribe averred in the memoranda in support of their respective motions that the Tribe would produce all documents relevant to issues in the action. The district court ultimately limited the discovery request to those portions of the Tribal Council minutes relating to: how much hay Karlen cut in 1973 and 1974, whether unauthorized stock were grazing on the leased premises in 1978, how much hay the contractual number of stock could be expected to consume, the fair market value of the hay, and the reasonable cost of harvesting the hay. In short, the district court ordered production of all documents relevant to issues remaining in the litigation.[7] The Tribe complied.

Karlen wanted to subpoena evidence about negotiation of the lease, apparently so that he could relitigate the interpretation of Supplemental Clauses 8 and 10. But, as previously discussed, he was collat-

---

**6.** In fact, Karlen cites no cases for his contention that relevant evidence was excluded. Nor does he suggest what information the excluded documents would have contained. Rather, he argues by analogy to trade secrets that Tribal Council minutes do not come within any privilege. In light of our decision that no relevant evidence was excluded, the privilege issue is a red herring, which need not divert our attention.

**7.** The issues in the action are determinative of the right to discovery. *Belcher v. Bassett Furn. Indus., Inc.*, 588 F.2d 904 (4th Cir. 1978); *Westminister Investing Corp. v. G. C. Murphy Co.*, 140 U.S.App.D.C. 247, 434 F.2d 521 (1970); *Walther v. Federal Election Comm'n*, 82 F.R.D. 200 (D.D.C.1979).

erally estopped from relitigating the interpretation of the contract. That "defense" was closed to him. All evidence relevant to "damages" was ordered produced except, again as previously discussed, that going to the spurious contention that this was an action for waste. Therefore, the district court did not refuse to compel discovery of any documents which were discoverable under Rule 26(b). This contention fails.

Accordingly, the judgment of the district court is affirmed.