**BI–STATE DEVELOPMENT AGENCY, Plaintiff-Appellant,**

v.

**WHELAN SECURITY COMPANY and Sentinel Security Service Co., Inc., Defendants-Respondents.**

**No. 47116.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 21, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1984.

Application to Transfer Denied Nov. 20, 1984.

Russell F. Watters, Bryan L. Hettenbach, St. Louis, for plaintiff-appellant.

Frank N. Gundlach, St. Louis, for defendants-respondents.

KELLY, Presiding Judge.

This appeal from the Circuit Court of the City of St. Louis presents the question whether the appellant, Bi-State Development Agency, is collaterally estopped from pursuing its claim against the respondents, Whelan Security Company and Sentinel Security Service Co., Inc., for damages.

Appellant filed a two count petition in the Circuit Court of the City of St. Louis seeking $1,500,000.00 damages it sustained when a fire occurred at the Bi-State Parks Airport on August 13, 1978. In Count I, it alleged that the defendants had agreed to provide a guard service at the Airport to tour and secure the premises, inspect for fire hazards, and investigate for and prevent the entry of unauthorized persons, but that on the date of the fire the defendants breached the security service agreement and allowed an unknown trespasser to set fire to the premises.

Count II of the petition alleged that the defendants had undertaken to provide security service to plaintiff and to the public at plaintiff's airport, but that defendants had on the date of the fire negligently failed to provide a guard to tour the premises, had failed to inspect and secure the premises, failed to check the identification of persons entering the premises, and had failed to prevent a certain unknown trespasser from entering and setting fire to the premises.

Defendants filed a general denial and raised several affirmative defenses. As the case proceeded through its pre-trial course defendants filed a motion for summary judgment. The grounds for this motion were that a jury in Division No. 11 of the Circuit Court of the City of St. Louis had on February 25, 1982, returned a verdict in favor of Bi-State (as appellant shall hereinafter be identified) in Cause No. 792–1773, *C. Tom Foster, et al. v. Bi-State* and the defendants in this present cause; that the verdict was on the merits and determined that the absence of the defendants' security guard on the night of the fire, was not the proximate cause of the loss sustained by plaintiffs in the Foster case; and that Bi-State's claim for property damages arising from the same fire and based upon the same allegations of negligence, was barred by the doctrine of res judicata or collateral estoppel. The trial court denied this motion.

Subsequently on September 13, 1982, leave was granted defendants to refile their Motion for Summary Judgment "on issue preclusion," and defendants refiled their Motion for Summary Judgment, contending that Bi-States' claim in this action was barred by the doctrine of collateral estoppel. The trial court sustained defendants' Motion for Summary Judgment on February 25, 1983. This appeal followed.

The Foster case involved a claim against Bi-State by Foster, as a tenant of Bi-State at Bi-State Parks Airport in Cahokia, Illinois, for damages sustained when the fire, which is the basis for this lawsuit, totally destroyed aircraft Hangar IV and its contents, including equipment and thirteen helicopters stored therein; and a claim by Fostaire Harbor, Inc., for destruction of some office equipment, shop equipment, tools, stored repair parts and equipment for helicopters stored in the hangars in this fire. Both Foster and Fostaire Harbor, Inc., also sought damages for disruption of business. A third plaintiff in the Foster case was Aviation General Insurance Company which provided insurance coverage of $381,500.00 on the helicopters lost in the fire and which amount was paid to Foster in exchange for subrogation rights, and it sought a judgment against Bi-State for the monies it had paid Foster.

Foster charged Bi-State: (1) negligently failed to provide security service and that no security guard was present on the night of the fire; (2) was negligent in contracting for only one guard to secure the entire airport; (3) negligently failed to provide watch clocks and timing devices so as to provide an adequate record of the presence and activities of guards and others at the airport; (4) leased premises to plaintiff which were inherently dangerous in that the electrical wiring system was faulty; and (5) leased to plaintiff premises which were inherently dangerous in that there was inoperable, insufficient, and ineffective fire fighting equipment.

Bi-State filed a third party petition joining the respondents as third party defendants wherein the security service agreement with the respondents was pled, and wherein it was further alleged that if the

plaintiffs in the Foster case recovered for their losses from Bi-State, then Bi-State should been titled to indemnification from respondents because of breach of their security agreement with Bi-State. Foster and its co-plaintiffs did not amend their petitions to join the third-party defendants as defendants in their claims.

While both the Foster case and this case were pending in the Circuit Court for the City of St. Louis, Bi-State's defense counsel filed a motion to consolidate both actions. However, counsel for Bi-State in this case opposed the motion. The motion for consolidation was never called up for argument nor ruled on.

The Foster case went to trial and during opening statement Bi-State's trial counsel told the jury that "the negligence of the guard, if there be any, was not the proximate cause of the fire or the subsequent destruction of Mr. Foster's and his allied company's property." In their Motion for Summary Judgment defendants stated that Bi-State's Airport Manager testified in the Foster trial that it would be pure speculation as to whether a guard or anybody else could have seen the fire that night between 12:20 and 12:56 a.m.; that it all depended upon where the guard was.

Plaintiffs in the Foster case submitted verdict-directors against Bi-State in the disjunctive on three theories of negligence: (1) failure to provide a security guard to inspect the door of the hangar where the tenant's property was located; (2) failure to provide a security guard especially watchful for fires; or (3) that Bi-State knew or could have known that the particular part of the airport leased to the plaintiff-tenants was equipped with faulty electrical wiring.

With respect to it's third-party claim against the defendants in this case, Bi-State submitted that if Foster, et al., recovered against Bi-State, then Bi-State should be indemnified if the jury found that Whelan and Sentinel breached their security

contract with Bi-State and that breach of contract caused Foster's damages.

The jury returned a general verdict against Foster, et al., and in favor of Bi-State on all counts. The verdict form on Bi-State's third party claim, signed by one juror, was in favor of Whelan and Sentinel.[1]

■ The doctrine of collateral estoppel applies when once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action including a party to the first cause. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

■ The nature of collateral estoppel is such that a fact appropriately determined in one law suit is given effect in another case involving different issues. *Hudson v. Carr*, 668 S.W.2d 68, 70[1] (Mo. banc 1984). The objective of the preclusion doctrine is to relieve the parties from the cost and vexation of multiple litigations, to conserve judicial resources, and to encourage reliance on adjudication by avoidance of inconsistent decisions. *Shaffer v. Terrydale Management Corporation*, 648 S.W.2d 595, 608[12] (Mo.App.1983).

■ In determining whether to apply collateral estoppel a court should consider: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. Most courts have added a fourth factor to these three, i.e., whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality. *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo.

---

1. Only one juror, the foreman, signed the verdict form on the third party claim, contrary to

MAI 2.04, which requires that the verdict be signed by "each juror who agrees to it."

Banc 1984); *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979).

■ It seems clear to us that these four criteria have been met in this case.

The first criteria is whether the issue in the prior adjudication was identical with the issues presented in this case. In the prior case the primary issue was whether the absence of respondents' security guard caused or contributed to cause the fire and resultant destruction of Bi-State's hangar and the contents therein. The petition in the Foster case alleged and the instructions submitted the same negligent acts on the part of Bi-State that Bi-State pleads against respondent in this case. The jury in the Foster case found that Bi-State's alleged negligence in failing to provide guard service neither caused nor contributed to cause the destruction of Bi-State's hangar and its contents. Bi-State's claim in the present case is identical to Foster's claim in the prior case.

■ The second criteria is whether the prior adjudication resulted in a judgment on the merits. A "judgment on the merits" is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or merely technical point, or by default, and without trial. *State ex rel. National Lead Co. v. Smith*, 134 S.W.2d 1061, 1068[13] (Mo.App.1939). There can be no dispute that the Foster case resulted in a judgment on the merits.[2] The jury in Foster found the issue of Bi-State's negligence or breach of contract in failing to provide a

security guard on the night of the fire against Foster.[3] Bi-State's third party claim against respondents in that case was for indemnification because, as Bi-State alleged, if it was liable to Foster, then respondents had breached their contract with Bi-State in the same terms as it alleged respondents' dereliction in its second amended petition in this case.[4] However, since the jury found against Foster on its claim against Bi-State, there was no basis for indemnification by respondents on Bi-State's third party claim and the trial court entered judgment in favor of Bi-State and against Foster and its co-plaintiffs in the Foster Case.

Foster appealed from the adverse judgment and subsequently filed a motion to quash and expunge third-party defendants Whelan Security and Sentinel Security from that appeal. This court, on December 14, 1982, granted this motion quashing and expunging respondents' participation in Foster's appeal. Under these circumstances we conclude that the prior adjudication resulted in a judgment on the merits on the third-party claim.

The third criteria, whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication is also satisfied because Bi-State was party defendant in the Foster case.

The only question remaining for consideration is whether Bi-State had a fair opportunity to litigate the issue in the Foster case.

■ In deciding this question, we consider the following factors:

2. This court has affirmed the judgment in *Foster, et al. v. Bi-State Development Agency*, 668 S.W.2d 94 (Mo.App.1984).

3. Bi-State was contractually bound by its lease with the plaintiffs in the Foster case to provide guard service.

4. a. Failed to provide guard service at Bi-State Parks Airport;
b. Failed to tour and inspect said premises;
c. Failed to secure all gates, doors and windows on said premises;
d. Failed to inspect for fires on said premises;
e. Failed to investigate for unauthorized persons on said premises;
f. Failed to check for necessary identification of persons entering said premises;
g. Failed to prevent an unknown third person from entering the premises and committing an act of arson on said premises;
h. Otherwise failed to exercise reasonable care and safety to provide adequate safeguards for the protection of said premises and the property contained therein.

1. Whether the person against whom estoppel is asserted had a strong incentive to litigate the first action;

2. Whether the second forum may afford the party against whom estoppel is asserted procedural opportunities not available in the first action;

3. Whether the prior judgment, upon which estoppel is based, may be inconsistent with one or more prior judgments; and

4. Whether the forum in the first action may have been substantially inconvenient to the party against whom estoppel is asserted.

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330–332, 99 S.Ct. 645, 651–652, 58 L.Ed.2d 552 (1979); *United States v. Karlen,* 645 F.2d 635, 639 (CA8, 1981). We conclude it did.[5]

Bi-State was sued for a total of $2,381,-500.00 in the Foster case because of its failure to furnish security guards as it was required to do under the terms of its lease with the plaintiffs in the Foster case. Its alleged damages in this case for the same failure was a maximum of $1,500,000.00. In its opening statement to the jury in the Foster case, Bi-State's trial counsel informed the jury that: "the evidence will show that that negligence of the guard, if there be any, was not the proximate cause of the fire or the subsequent destruction of Mr. Foster's and his allied companies' property." The inference was that the fire was started in one of two ways: by a spark igniting a 55 gallon drum of aviation gasoline, which drum would not have been easily discoverable by a guard had one been there, or by arson. Bi-State had good reason and opportunity to fully litigate this issue.

The forums were the same in each case, i.e., the Circuit Court of the City of St. Louis so that the procedural opportunities available to Bi-State were the same in each case.

There is nothing in the record to show that there are any prior inconsistent verdicts growing out of this incident.

Since the forum is the same in both cases the convenience to Bi-State in this case is no less than it was in the Foster Case.

Appellant, in the Foster case, denied that its failure to furnish a security guard was the proximate cause of the damages sustained by Foster, et al., and the jury agreed. In this case Bi-State contends that the failure of these respondents to furnish a security guard was the proximate cause of their damages from the same fire. Under these circumstances we conclude that the application of the doctrine of collateral estoppel against Bi-State is not unfair, and affirm.

STEWART and SNYDER, JJ., concur.

5. The same judge who presided at the trial of the Foster case ruled on the respondents' Mo-

tion for Summary Judgment from which came this appeal.