Steven **EWING**, Appellant,

v.

**ST. LOUIS–CLAYTON ORTHOPEDIC GROUP, INC.**, Appellee.

No. 85–2065.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1986.

Decided May 9, 1986.

Rehearing Denied June 12, 1986.

Jona Goldschmidt, Carbondale, Ill., for appellant.

Robert D. Huelskamp, St. Louis, Mo., for appellee.

Before HEANEY and FAGG, Circuit Judges, and WOODS,* District Judge.

HENRY WOODS, District Judge.

Steven Ewing appeals from the judgment of the district court dismissing his claim for damages resulting from a physician's allegedly erroneous opinion regarding Ewing's fitness to return to work. For reversal, Ewing claims the district court erred in granting summary judgment in favor of the appellee on the malpractice claim since genuine issues of material fact remain as to the existence of a physician-patient relationship. Appellant also contends the court erred in applying Illinois law and finding he is collaterally estopped from pursuing his claim by a decision of an Illinois circuit court. For the reasons set forth below, we affirm the position of the district court in all respects except as to the application of collateral estoppel.

The plaintiff-appellant, a resident of Illinois, sustained an employment-related injury in Illinois while working for an Illinois company. The employer and its compensation carrier paid benefits under the Illinois Workers' Compensation Act. In order to secure an evaluation of plaintiff's ability to return to work, the employer referred him first to an Illinois physician and subsequently to a St. Louis, Missouri physician affiliated with the defendant-appellee, St. Louis-Clayton Orthopedic Group, Inc. Both physicians, after examining plaintiff at their respective offices, reported to the employer that he was able to return to work. Plaintiff contends that the examinations were negligently performed, that he was not physically able to return to work, and that his premature return resulted in a second injury also sustained in Illinois.

Plaintiff sued both doctors in Illinois state court but was unable to obtain service on the Missouri defendant. The Illinois physician moved to dismiss the action on the grounds that there was lack of a physician-patient relationship and that the action was barred by a provision in the Illinois Workers' Compensation Act which prohibited suits by a compensation claimant against a co-employee. On March 10, 1983 the Illinois state judge dismissed the complaint without specifying the basis for his action. Plaintiff did not perfect an appeal from the judgment of dismissal.

On August 23, 1983 the plaintiff filed suit against defendant St. Louis-Clayton Orthopedic Group, Inc. in the United States District Court for the Southern District of Illinois. Because of the lack of jurisdiction, the cause was transferred to the Eastern District of Missouri on January 6, 1984. In response to a motion to dismiss which the U.S. District Judge converted into a motion for summary judgment, the action for malpractice was dismissed. However, relying on California[1] and Texas[2] cases in the absence of Missouri authority, the district judge recognized a cause of action for common law negligence and denied summary judgment on that issue. "Plaintiff Ewing has sufficiently pled facts from which it could be inferred that either Dr. Scheer performed the examination in a negligent manner or furnished erroneous information to the plaintiff's employer or both, thereby breaching a duty of care owed to the plaintiff."[3]

Subsequent to this decision, the defendant moved for summary judgment arguing that pursuant to Missouri's conflict of laws

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. *Olsen v. Western Airline,* 143 Cal.App.3d 1, 191 Cal.Rptr. 502 (1983).

2. *Armstrong v. Morgan,* 545 S.W.2d 45 (Texas Civ.App.1976).

3. Memorandum of District Judge, September 28, 1984. (Appellant's brief at 29).

rule Illinois law governed and that plaintiff was collaterally estopped from pursuing this claim due to a prior adjudication of the same cause of action by the Illinois Circuit Court. The district judge granted the motion on this basis. This appeal followed.

### I.

 This case involves several aspects of the law of conflict of laws. The district judge properly held that Missouri has adopted "the most significant contacts" as its conflict of laws rule.[4] A Missouri federal court in a diversity case must apply the Missouri law of conflict of laws.[5] In holding that Missouri would look to Illinois law to decide at least one of the issues in this litigation, the district judge did not err. Clearly, the significant contacts were with Illinois. Plaintiff, an Illinois resident, sustained both injuries in Illinois while covered by the Illinois Workers' Compensation Act by virtue of employment by an Illinois company. It was therefore proper to look to the Illinois compensation act and Illinois interpretive decisions to ascertain whether an action against defendant was barred. Defendant argues that the Illinois Act bars a suit against a co-employee and that the defendant doctor falls in this category.[6]

This argument is totally without merit.[7] The indicia that bring a doctor within the purview of the above statute are set forth in a recent Illinois case [8] as follows:

(1) examination and treatment *only* of company employees injured at work;

(2) services made available to employees without charge;

(3) an annual salary not contingent upon the number of employees treated;

(4) a fixed number of hours at the company plant;

(5) social security contributions by the company on doctor's behalf;

(6) eligibility for company pension and company medical benefits identical to other company employees;

(7) doctors' medical support personnel and facilities provided by the company; and

(8) company retention of the power and authority to discharge the doctor from his employment.

All the above indicia need not be present, but a substantial number are required.[9] In this case none of these indicia were operative. By no stretch of the imagination could Dr. Scheer be considered an employ-

---

**4.** The court cited *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969); *see also Byrn v. American Universal Ins. Co.*, 548 S.W.2d 186 (Mo.App.1977); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Restatement (Second) of Conflict of Laws*, § 145 (1971).

**5.** *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**6.** The provision upon which defendant relies reads as follows: "No common law or statutory right to recover from the employer, his insuror, his broker, any service organization retained by the employer, his insuror, his broker, to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this act." Ill.Rev.Stat., ch. 48, § 138.5(a).

**7.** Defendant relies on *McNeil v. Diffenbaugh*, 105 Ill.App.3d 350, 61 Ill.Dec. 224, 434 N.E.2d

377 (1982) and *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980). The cases are not in point; the former involved a company doctor and the latter a company nurse. The doctor was hired by plaintiff's employer, Montgomery-Ward, to staff its own medical facility. The court described the doctor as a "private company physician." The nurse was a co-employee hired as a full-time worker, performing his duties at the company premises.

**8.** *Young v. St. Elizabeth Hospital*, 131 Ill.App.3d 193, 86 Ill.Dec. 389, 475 N.E.2d 603 (1985).

**9.** *See Komel v. Commonwealth Edison Co.*, 56 Ill.App.3d 967, 14 Ill.Dec. 563, 372 N.E.2d 842 (1977). "Other relevant indicia include whether compensation is on a time basis or by the job; the right to discharge; the nature and duration of the occupation; who furnishes materials, equipment and tools as well as personnel to assist the employee; and the right to control the hours, place, and scope of work." 372 N.E.2d at 845 (citations omitted).

ee of United Parcel. It follows that the Illinois Workers' Compensation Act does not bar this suit since Dr. Scheer was not a co-employee of the plaintiff.

### II.

■ The district court erred, however, in failing to apply the Missouri collateral estoppel rule. "[W]here the first action was brought in state court and involved non-federal matters, the overwhelming view is that the federal district court is required under *Erie* [10] to follow the res judicata law of the forum state." [11]

The Missouri law of collateral estoppel is well summarized in *Oates v. Safeco Inc. Co. of America*, 583 S.W.2d 713 (Mo. banc 1979). [12] A court considering whether to apply collateral estoppel should consider the following factors:

(1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action;

(2) whether the prior adjudication resulted in a judgment on the merits; and

(3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

583 S.W.2d at 719 (citations omitted). "Most courts have added a fourth factor ... whether the party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." [13] *Id.*

■ Tested by the Missouri collateral estoppel rule, three of the above require-

ments were not met. The issue was not identical. It involved a different examination by different doctors at different times and the basis for the respective opinions of the two doctors could have been entirely different. Furthermore, there was no judgment on the merits in the prior litigation. The plaintiff did not have a full and fair opportunity to litigate the issue against the present defendant in the prior suit.

Significantly, the Illinois state court judge did not state the precise basis of his decision on the collateral estoppel issue. The exact issues must have been "unambiguously decided in the earlier case." *Owens v. Government Employees Insurance Co.*, 643 S.W.2d 308, 310 (Mo.App.1982). In *Owens* the trial court did not specify the exact reasons for its action and it was unclear which issues were determined. "Sufficient ambiguity exists to deny the application of collateral estoppel." *Id.* Just as in the judgment rendered by the Illinois trial court herein, the trial court could have relied on one of several theories in *Owens*. The same situation occurred in *Kansas City v. Graybar Electric Co., Inc.*, 485 S.W.2d 38 (Mo.1972). In that case the defendant pleaded several defenses (as was done in the Illinois trial court). Since it was not clear on what basis the trial court relied to enter judgment for the defendant, the Missouri Supreme Court refused to apply collateral estoppel. We hold the district court erred when it applied collateral estoppel to the present litigation.

**10.** *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**11.** Moore, *Federal Practice & Procedure*, Vol. 1A part 2 p. 3178 (1985) (citing many cases in n. 24, including cases from the Second, Third, Fourth, Fifth, Sixth, Ninth, and D.C. Circuits). *See also* Leflar, *American Conflicts Law* § 76 (1977).

**12.** This case followed the view of Chief Justice Traynor in *Bernhard v. Bank of American National Trust & Savings Assn.*, 19 Cal.2d 807, 122 P.2d 892 (1942).

**13.** The requirements implicit in the fourth factor were set forth in *Bi-State Development Agency v. Whelan Security Co.*, 679 S.W.2d 332 (Mo.App.1984), *citing Parklane Hosiery Co., Inc.*

*v. Shore*, 439 U.S. 322, 330–32, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979) and *United States v. Karlen*, 645 F.2d 635 (8th Cir.1981). They include: "1. Whether the person against whom estoppel is asserted had a strong incentive to litigate the first action; 2. Whether the second forum may afford the party against whom estoppel is asserted procedural opportunities not available in the first action; 3. Whether the prior judgment, upon which estoppel is based, may be inconsistent with one or more prior judgments; and 4. Whether the forum in the first action may have been substantially inconvenient to the party against whom estoppel is asserted." 679 S.W.2d at 337.

## III.

■ Before reaching the issue of collateral estoppel which he found dispositive, the district judge held that a cause of action was stated for common law negligence even though a claim of malpractice was inappropriate.[14] Noting an absence of Missouri cases, reliance was placed on decisions from other jurisdictions, which are cited above.[15] The view of the experienced district judge that the Missouri courts would sustain the allegation of common law negligence is entitled to great respect, particularly in the absence of governing Missouri authority.

Did he, however, erroneously apply Missouri law in this situation? Having properly referred to Illinois law in deciding the issue of whether the suit was barred by the Illinois compensation act, can he now look to Missouri law in determining whether a suit for negligence can be maintained against the Missouri doctor? Should the law of different states be applied to resolve different issues in the same case? Under the conflict of laws doctrine of "depecage," such an approach is perfectly permissible and even considered desirable in many instances.[16] Professor Willis L.M. Reese,[17] a leading commentator, states as follows:

> Amid the chaos and tumult of choice of law, there is at least one point on which there seems to be general agreement in the United States. This is that choice of

applicable law should frequently depend upon the issue involved. The search in these instances is not for the state whose law will be applied to govern all issues in a case; rather it is for the rule of law that can most appropriately be applied to govern the particular issue. As a result situations do arise where the court must decide whether it should apply the rules of different states to determine different issues in a single case. This process of applying the rules of different states to determine different issues has the forbidding name of depecage."

W. Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 Colum.L.Rev. 58 (1973).

Professor Reese suggests that depecage is clearly appropriate when the application of the rules of different states to determine different issues in the same case (a) would result in the application to each issue of the rule of the state with the greatest concern in the determination of that issue, (b) would serve to effectuate the purpose of each of the rules applied, and (c) would not disappoint the expectations of the parties.

In *Kilberg v. Northeast Airlines*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961) suit was brought on behalf of the estate of a New York domiciliary who was killed in a Massachusetts plane crash. The New York Court of Appeals applied the Massachusetts wrongful death statute

---

**14.** He based this holding on the lack of a physician-patient relationship. "The Court is unable to locate any Missouri cases specifically relating to the subject matter of medical malpractice in a workers' compensation situation of the type involved here. Nevertheless, it appears there may be a trial in Missouri to establish the existence of a physician-patient relationship before tort liability for medical malpractice can be imposed." (Appellant's brief, addendum at 2–3). The district judge cited *Barnhoff v. Aldredge*, 327 Mo. 767, 385 S.W.2d 1029 (1931). The language of the decision at page 1031 supports this proposition at least by strong implication. In *National Credit Associates, Inc. v. Tinker*, 401 S.W.2d 954 (Mo.App.1966), the court quoted and italicized the following statement from the annotation to *Barnett v. Aldridge, supra,* in 74 A.L.R. 1252, 1264–65, 327 Mo. 767, 38 S.W.2d 1029: *"The relation of dentist and patient made it malpractice."* The excerpt from the annota-

tion drew the distinction between "malpractice" and "fraud" for purposes of the statute of limitations. This also is the view of the Missouri Model Jury Instructions Committee. See the Note on Use to the Missouri Verdict Directing Malpractice Instruction, Missouri Approved Jury Instructions No. 21.01 (1981). We accept this analysis of Missouri law and the conclusion that in Missouri a physician-patient relationship is required in a malpractice action.

**15.** See nn. 1 and 2.

**16.** *See* R. Leflar, *American Conflicts Law* § 109 (3d ed. 1977) and R. Leflar, et al, *Cases and Materials on American Conflicts Law* at 283 (1982).

**17.** Charles Evans Hughes Professor of Law, Columbia University.

to the issue of liability for the death but applied New York law to the measure of damages. In *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) the host-guest issue was governed by New York law, though the issue of defendant's negligence would be determined by Ontario's "rules of the road." In *Fells v. Bowman,* 274 So.2d 109 (Miss.1973) Mississippi residents were involved in a Louisiana automobile accident. In Mississippi litigation the court applied the Mississippi comparative negligence act but held that Louisiana rules of the road should be applied: "This contention brings into focus the question of whether the court is required under the 'most significant relationship' or 'choice of law rule' to apply the law of a single state to every facet of the case. We think not." [18] *Id.* at 112.

"Whatever may be the methodological differences between the approaches of legal writers, the American Law Institute's second *Restgatement* and the practice of the courts, all agree that choice of law must be made on an issue-by-issue basis and that such choice need not be the same as to every issue in a case." [19]

It makes sense to look at the Illinois Workers' Compensation Act and the interpretive decisions to determine if the doctor is immune from suit. Illinois has the greatest interest in its own compensation act. Uniformity of interpretation affects rates and the rights of Illinois workers and employers.

■ On the other hand, Missouri has a great interest in the way medicine is being practiced within its borders by physicians whom it has licensed. The practice of medicine is a highly important and highly regulated profession. The conduct of physicians is not only circumscribed by law but by the ethical standards promulgated by state and local medical societies and qualifying boards. There is some variation from state to state in how the practice of medicine is regulated and as to the standard required. In this regard Missouri has the paramount interest and the district judge did not err in choosing Missouri law for a determination of the medical negligence issue.

## IV.

In summary, the district court did not err in applying Missouri law to the issue of whether the physician was guilty of common law negligence. While Illinois law was applicable to other aspects of the case, it was not applicable to the issue of collateral estoppel. On this issue the law of Missouri, the forum state, applies. Clearly, the Missouri law of collateral estoppel would not bar this claim. This cause must therefore be reversed with directions to overrule the motion for summary judgment.

FAGG, Circuit Judge, concurring in the result.

I agree that no physician-patient relationship existed between Ewing and the Missouri physician. As a result, Ewing's malpractice claim must fall. I agree further that Missouri collateral estoppel principles do not bar Ewing's common law negligence claim. Thus, reversal in part with remand for further proceedings is required.

18. For this principle the court cited and relied upon *Wilcox v. Wilcox,* 26 Wis.2d 617, 133 N.W.2d 408 (1965) where it was said: "[W]e believe that in order to determine the 'most significant relationship' consideration should be given to the policies and interests of the forum state, the tort state, and of other states that may have an interest by virtue of the domicile of the parties or other relevant factors. It is obvious that one state may have a legitimate concern with one facet or issue of the case, but not with another, and hence we conclude that it is not necessary in each case to apply only the law of a single state to all phases of the lawsuit, i.e., what

is negligence, for example, may well involve the application of the rules of the road of the tort state since it is that state that is primarily concerned with safety on its highways.

"However, the *degree* of negligence (i.e., gross or ordinary) necessary to ensure recovery may be unrelated to the policies of the tort state, but highly relevant to the policy of the forum state and as to that issue the law of the forum would govern." (26 Wis.2d at 631, 133 N.W.2d at 415).

19. C.L. Wilde, *Depecage in the Choice of Tort Law,* 41 So.Cal.L.Rev. 329, 347 (1967).

However, while I am largely in agreement with the result reached by the court, I am unable to join its opinion for two reasons. First, while I agree the two negligence actions brought by Ewing are separate and distinct actions, I believe the focus of the court's collateral estoppel analysis should center on the status of the Missouri doctor and not on his potentially negligent acts. Second, while concluding the status of the Missouri doctor presents an issue distinct from the issues decided by the Illinois court in Ewing's first action, I believe a determination of that status should in the first instance be made by the district court.

Under Illinois law, although an individual receives worker's compensation, that person is not necessarily precluded from bringing certain claims that have arisen out of his or her injuries or treatment. Consequently, while Ewing has received $21,000 in worker's compensation, he may still be able to prosecute his common law negligence claim against the Missouri doctor. The Missouri doctor will be immune from suit, however, if the doctor falls within a certain class of individuals protected from suit by Illinois worker compensation law. *See* Ill.Rev.Stat., ch. 48, § 138.5(a).

Whether a particular defendant falls within a class of protected individuals presents a factual issue peculiar to each situation. Thus, the issue of whether the Missouri doctor is protected from suit under Illinois law is unique from, rather than identical to, the issue presented in Ewing's prior action against the Illinois doctor. As a result, under Missouri law collateral estoppel presents no bar to Ewing's negligence claim. *See Oates v. Safeco Insurance Co.*, 583 S.W.2d 713, 719 (Mo.1979) (en banc); *Bi-State Development Agency v. Whelan Security Co.*, 679 S.W.2d 332, 335 (Mo.App.1984).

However, whether the defendant falls within a protected class under Illinois law is a factual question. That question should not be resolved by this court but rather should be resolved by the district court on remand. If on remand the district court were to find the defendant to be within a protected class, Ewing would then be precluded from maintaining his negligence claim. If, however, the defendant was found to fall outside the protective scope of the Illinois statute, Ewing's negligence claim would not be barred and Missouri substantive law would be applicable.