18 N.Y.2d 549 (1966)
Mayes Company, Inc., Respondent-Appellant,
v.
State of New York, Appellant-Respondent.
Court of Appeals of the State of New York.
Argued September 22, 1966
Decided December 30, 1966.
Louis J. Lefkowitz, Attorney-General (Julius L. Sackman and Ruth Kessler Toch of counsel), for appellant-respondent.
Herman E. Gottfried for respondent-appellant.
Chief Judge DESMOND and Judges FULD, VAN VOORHIS, BURKE, BERGAN and KEATING concur in Per Curiam opinion; Judge SCILEPPI dissents in a separate opinion.
*551 Per Curiam.
Claimant is the owner of a manufacturing plant which uses substantial quantities of water in its processes. On its land were springs which fed a pond from which claimant was able to take sufficient water for its manufacturing needs.
The State condemned a fractional part of an acre which contained most of the area of the pond, including a spring which fed it, and constructed a road on the site. There was, however, as claimant's engineering witness conceded, "considerable underground water" in the area of the claimant's plant.
An expert witness for the State testified that he could drill a well in the claimant's property which would produce sufficient water for claimant's industrial needs. The witness had been engaged in well drilling for many years and had drilled ten wells in the Village of Fleischmanns, in which claimant's property is *552 located, four for the village itself. One successful village well was drilled within 800 feet of claimant's property. His estimate of the cost of drilling and the construction of a pump house and electrical work was $13,578.90.
Although claimant did not show that it was not feasible or practical to find and use sufficient water on its remaining land, and thus the State's proof as to feasibility stood uncontradicted, the Court of Claims allowed claimant $200,000 for the loss of water caused by the road's being built over the spring and a portion of the pond.
This rested on a capitalization for a 20-year period at 5% of the annual cost of buying water from the public supply of the village at $7,000 a year, plus $3,000 annually for treating this water to make it suitable. The $200,000 thus allowed to buy water was almost 75% of the value, at $279,100 as found by the Court of Claims, of all the land owned by claimant and the special machinery and buildings with which it was improved.
In dealing with the State's proof that a well could be drilled on claimant's property which would produce sufficient water, the court observed that "no further proof was presented" which would show "any practical certainty of success".
The court accordingly rejected the State's proof and sanctioned the grossly more expensive method of capitalizing over a period of many years the cost of buying village water and treating it.
The basis for this was that claimant's witness had, in the language of the court, "testified that the feasibility" of a well "had been considered" and "the conclusion was reached" that "too much speculation would be involved to justify the expense".
That a well could be drilled sufficient to produce enough water was uncontradicted in the record. It was not an adequate answer to this proof that claimant had itself concluded "too much speculation would be involved to justify the expense".
The radical difference in cost to the State for which the claimant contended depended entirely upon its being found that sufficient water could not be developed at a reasonable cost on the remaining land and claimant did not meet the State's proof in this respect.
*553 The Court of Claims, in addition to the $200,000 for the capitalized annual cost of buying and treating village water, allowed $38,000 for a water storage tank, $43,000 for a plant for treating the village water, and $3,000 for connecting up with the village supply, these separate items totaling $84,000. Thus the award was reached at $284,000. The Appellate Division regarded the method by which the annual expense was capitalized as erroneous and too high and, reducing the $200,000 item to $150,000, modified the award to $234,000.
The disparity is so great, however, between the cost of getting enough water on land shown to have "considerable underground water" and the capitalized cost of buying water from another source and treating it, that the uncontradicted proof of feasibility ought to have led to a cautious judicial approach to the use of capitalization as a measure of damages.
The basic rule of damages as to diversion of water from a spring has been said to be the "diminished rental value" of the commercial premises (Colrick v. Swinburne, 105 N.Y. 503) but, of course, the rule to be applied must be appropriate to the particular case in hand and must be fair.
Although capitalization of annual future cost may come to have a place in the law of damages in appropriate circumstance, it ought not usually be employed where there is a reasonably available alternative.
Basically the theory is a means of measuring a lost future income rather than a future expense (cf. Schmutz, Condemnation Appraisal Handbook [rev. ed., 1963]; McMichael, Appraising Manual [4th ed., 1951]). A lack of other available means of evaluating future sales and revenues justified its use in Mt. Hope Cemetery Assn. v. State of New York (11 A D 2d 303, affd. 10 N Y 2d 752).
As a regular means of measuring a future income, and especially future expenditure for buying a commodity as relating to damage done to realty, it must be viewed with considerable reservation (cf. Midcourt Bldrs. Corp. v. State of New York, 24 A D 2d 532).
The State would add to the $13,578.90 the cost of the well, pump house and electrical work, $38,000 for a water storage tank, using the claimant's figures, and $2,065 for the value of the land actually taken (0.143 acre at $5,000 an acre) and from *554 this suggests a total award of $53,643.90, which is about $181,000 less than the modified award made at the Appellate Division.
As Judge SELDEN observed long ago, there rests on a party seeking damage "the active duty of making reasonable exertions to render the injury as light as possible" (Hamilton v. McPherson, 28 N.Y. 72, 77). The burden of proof on the need to minimize damages, as HUBBS, J., noted in People's Gas & Elec. Co. v. State of New York (189 App. Div. 421, 424), seems to be ("is apparently") on the party seeking to limit recovery.
Nevertheless, the party seeking damages is under the duty to make a "reasonable effort" to avoid consequences of the act complained of (189 App. Div., supra, p. 424). It is, indeed, a rule of broad acceptance that "No recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures" (25 C. J. S., Damages, § 33, p. 698; see, also, 29A C. J. S., Eminent Domain, § 155, p. 655).
The burden of proof on mitigation is not significant in the present case since the question essentially is one of the appropriateness of damage to the taking of a portion of the land and the reliability and significance of the claimant's proof of damage. If the question of burden of proof be regarded as important, it must be deemed that the State has met it by the uncontradicted proof of the feasibility of well drilling.
The limitations of our jurisdiction as well as the legal requirements of the case indicate that there should be a new trial. There ought to be a careful and adversary re-examination at the Court of Claims of the potential water resources of claimant's remaining land and the cost of their development.
Claimant in seeking to utilize capitalization as a form of damage arising from future expenses must show by sufficient proof that the physical inadequacies of its land are such that it is necessary to resort to this uncommon measure.
As a reasonable incident to the kind of plenary examination of feasibility that ought to develop in the new trial, claimant should, as a precondition to the admissibility and consideration by the court of any capitalization method, consent to controlled tests by the State of the water potential of its land.
So far as it is possible to have them, the court should be fully advised of the essential physical facts on which damages may be reliably based.
*555 The order should be reversed and a new trial granted, with costs to abide the event.
SCILEPPI, J. (dissenting).
The majority merely says that both courts below should be reversed because the amount of damages awarded is too high, and the testimony of a partisan expert that a well might produce a sufficient supply of water was not credited. These determinations are merely factual, and, I suggest, conclusively determined (Cohen and Karger, Powers of the New York Court of Appeals, § 100, p. 452).
While I agree that the duty to mitigate damages is on the claimant if it is reasonably possible to do so, and the burden of proof on the need to mitigate damages is on the State, I am of the opinion that the Court of Claims had no alternative but to accept the claimant's proof on the question of damages, for the State offered nothing more than evidence which was highly speculative. It failed to offer any substantial evidence upon which to base any other finding. The claimant was not required to bear the cost of experimenting with the State's method, i.e., well drilling (Allen v. McConihe, 124 N.Y. 342; Leonard v. New York, Albany & Buffalo Tel. Co., 41 N.Y. 544). The State, if anyone, should have undertaken such a step and offered the results as proof of its case.
On this branch of the case, I see nothing more than an affirmed factual finding which we cannot review (CPLR 5501, [b]; People ex rel. MacCracken v. Miller, 291 N.Y. 55, 61; cf. Matter of City of New York [Clearview Expressway], 9 N Y 2d 439, 441; see Cohen and Karger, op. cit., supra, p. 449).
On this record, the court was more than justified by the proof in coming to the conclusions reached in making the award herein, except so much thereof as was modified by the Appellate Division dealing with the capitalization process employed by the trial court. The Appellate Division's modification of the judgment of the Court of Claims should be affirmed.
Order reversed and new trial granted, with costs to abide the event.