STATE HIGHWAY COMMISSION, Appellant

v.

PINNEY et al., Defendants

(171 N.W.2d 68)

(File No. 10597. Opinion filed October 1, 1969)

Jack R. Von Wald, Special Asst. Atty. Gen., for appellant. Frank L. Farrar, Atty. Gen., on the brief.

Gene Lebrun, of Whiting, Lynn, Jackson, Freiberg & Shultz, Rapid City, for respondent.

BIEGELMEIER, Presiding Judge.

The State took possession of and here asks condemnation of 19 acres on which were located some trees, buildings, a spring, two shallow wells, and four dams. After a jury verdict of $8,750 for land taken and damages to the remainder of the original tract of 154 acres the State appeals. The main question presented is whether the trial court erred in refusing to give the State's requested Instruction I A on a landowner's duty to minimize damages.

The testimony on behalf of defendants of the before and after taking values was all based on the fact that the tract had a source of water supply necessary to graze livestock before the taking and none thereafter. The water in the dams was mainly from the wells in the land taken. It appears this land

is in an area where rainfall is deficient and the importance of a supply of water may be summed up in the words of one witness that "You haven't much if you haven't got water" and another that water was like gold. After this evidence was admitted the State introduced evidence that new wells could be dug on the remaining land at a cost of $350, that in fact test holes had been dug which would produce a sufficient amount of water for such livestock.

Plaintiff's proposed Instruction I A, which the court refused to give was:

> "The landowner has a duty to minimize his damages and to use all reasonable exertion and steps to protect himself, and avert, as far as practicable, the injurious consequences of the taking. However, any expenses which the landowner reasonably and in good faith incurs in an effort to minimize his loss, are to be taken into account in computing the compensation to be awarded him."

■ We conclude the court erred in so ruling as the instruction was a correct statement of the law and was based on the described testimony in behalf of the State which the court had properly admitted in evidence. State Highway Commission v. Hayes Estate, 82 S.D. 27, 140 N.W.2d 680, approved the admission in evidence of costs claimed necessary to restore the property to its condition before the taking, where the court wrote:

> "As a general rule, in determining the diminution in market value of the land not taken, it is proper to take into consideration the expense made necessary by the improvement, 29A C.J.S. Eminent Domain § 164, in order to restore the land to its most advantageous use, 18 Am.Jur., Eminent Domain, § 269, or in adjusting it to the changed conditions brought about by the taking."

The court then quoted from Pima County v. De Concini, 79 Ariz. 154, 285 P.2d 609:

" 'The rule also is that in arriving at the market value of land which has been damaged by the exercise of the right of eminent domain the court has a right to admit evidence of possible expenditures which, if expended, would diminish the damages.' "

The admission of such evidence and argument to the jury thereon would be of little avail to a party without an instruction as to its effect.[1] These expenditures, while admissible and proper to be considered by the jury in determining the diminution in the market value of the land not taken, must not exceed the difference in market value before and after the taking. However, as said in State Highway Commission v. Hayes Estate, supra, that would not occur in the instant case. This guide fulfills the purpose of just compensation by restoring owners to as good a position as they were in prior to the taking. State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675, 77 A.L.R.2d 533, and State Highway Commission v. American Memorial Parks, Inc., 82 S.D. 231, 144 N.W.2d 25.

■ In City and County of Denver v. Noble, 1951, 124 Colo. 392, 237 P.2d 637, plaintiff claimed defendant, in building a road, damaged and destroyed an irrigation ditch used for conveying water to her property. The jury awarded $9,000 damages though there was evidence the owner could obtain the water by lowering a culvert at an expense of about $200. The court reversed because of inconsistent and contrary instructions. Approving one of the instructions stating it was her duty " 'to take all reasonable steps necessary to mitigate the damages' " it wrote:

"It was the duty of plaintiff to mitigate her damages, if she could reasonably do so, by constructing another ditch or lateral to convey water to her land."

The Court of Appeals of New York reached a similar conclusion as to the duty to minimize damages by drilling a well

---

1. The trial court gave such an instruction in State Highway Commission v. Hayes Estate, supra, which this court said was "complete and accurate".

in Mayes Company v. State, 1966, 18 N.Y.2d 549, 277 N.Y.S.2d 393, 223 N.E.2d 881. The Court of Claims had allowed claimant $200,000 for loss of water caused by a road being built over a spring and portion of a pond. This award was based on the annual cost of buying water from the public supply of a village over a 20-year period. There was evidence a well could be drilled on claimant's property for around $14,000 which would produce sufficient water. The court first rejected a contention this involved "too much speculation * * * to justify the expense" and then said:

> "As Judge Selden observed long ago, there rests on a party seeking damage 'the active duty of making reasonable exertions to render the injury as light as possible' * * *

> "Nevertheless, the party seeking damages is under the duty to make a 'reasonable effort' to avoid consequences of the act complained of * * * It is, indeed, a rule of broad acceptance that 'No recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures' (25 C.J.S. Damages § 33, p. 698; see, also, 29A C.J.S. Eminent Domain § 155, p. 655)."

Accord as to duty to build a ford, Little v. Burleigh County, 1957, N.D., 82 N.W.2d 603. The above opinions apply what seems to be the general rule to specific fact situations comparable to the case at bar.[2]

Perhaps it should be added that "mitigation of damages" is well recognized in the general law on that subject. 22 Am. Jur.2d, Damages, § 200 et seq. There and in § 30 through § 33 the phrase is said to be one of the limitations on the amount of recovery; it may be stated that a party may not recover damages which he could reasonably have avoided. The cited text denominates these efforts to minimize damages more precisely

---

2. In addition to the citations in State Highway Commission v. Hayes Estate, supra, see 26 and 27 Am.Jur.2d, Eminent Domain, §§ 155, 314, and 4 Nichols on Eminent Domain, § 14.22, p. 520.

as the doctrine of avoidable consequences and that often it is expressed as a **duty** of a party to minimize his damages or as an **obligation** to take reasonable action to avoid enhancing the damages.

"Such statements are inaccurate expressions of the doctrine * * * because * * * the failure to take reasonable action to limit damages creates no affirmative right in anyone. The only result of such a failure is that the court will not allow damages for those consequences of the injury which it believes the plaintiff could reasonably have avoided." 22 Am.Jur.2d, Damages, § 30.

It is probably an exercise in semantics to discuss the niceties of the word "duty" in the requested instruction. In an early work, Sutherland on Damages, Fourth Ed. §§ 88 and 90, uses the word "duty". South Dakota Pattern Jury Instruction 33.02 under the title "Damages—Property—Duty to Mitigate", states the owner of the damaged property "must exercise ordinary care to minimize" existing, and to prevent further, damages; the California Jury Instructions, BAJI (5th Ed.) No. 14.68 under the title "Duty to Mitigate" states the owner "is **bound** to * * * minimize the damages" while as to personal injuries in No. 14.67 it states it is his "duty" to do so. The word "duty" likewise is used in 7 Am.Jur., Pl. and Pr. Forms, Damages, 7:86. In 15 Am.Jur., Damages, § 27, the title is "Duty to Prevent or Minimize Damages" while the text states "One who is injured * * * is **bound** to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage". (Emphasis supplied) Section 40 thereof uses the term "duty" in the text. To § 27 is appended note 12 from which this court quoted in Chicago, Burlington & Quincy Railroad Company v. Wheaton, 76 S.D. 467, 80 N.W.2d 868, approving the rule in principle. In that note will be found citations and quotations from cases using the various terms mentioned, all are in effect of the same meaning. It appears this note led to the text in 22 Am.Jur.2d, Damages, §§ 30 - 32, supra. It is clear that if a person must or is bound to do an act, it is a duty to do so.

Two decisions of the North Dakota Supreme Court discuss this subject. In the first opinion, Nicola v. Meisner, 1957, N.D., 84 N.W.2d 702, the court quoted Sections 27 and 40 of 15 Am.Jur., Damages, and from Michigan and Nebraska opinions which used the term "duty". Thereafter in Stetson v. Investor's Oil, Inc., 1966, N.D., 140 N.W.2d 349, the court compared an instruction given with No. 19 refused. It wrote: ·

> "The court's instruction sets forth a statement of the general rule relating to the duty to minimize damages, or, as it is sometimes called, the doctrine of avoidable consequences. Investors' requested instruction No. 19 states another version of the same general rule. This court has approved the language used by the trial court in its instruction and has also approved the language used by Investors in its requested instruction No. 19. Nicola v. Meisner, N.D., 84 N.W.2d 702, 705. The language in **Nicola** states the rule substantially as found in the court's instruction and then states another version of the same rule which is substantially the language used in Investors' requested instruction No. 19. The **Nicola** case recognized that the version of the rule found in Investors' requested instruction No. 19 is only another statement of the same rule found in the trial court's instruction. The trial court did not err in choosing one version of the rule and rejecting the other when both versions were equivalent."

It is not necessary to decide if a "duty" version or an "avoidable consequences" version should have been given. The requested instruction was proper and it or an equivalent should have been given.

The Colorado, Arizona and New York Courts and this court in State Highway Commission v. Hayes Estate, supra, did apply the doctrine to condemnation proceedings in the cited cases, and we add the California Supreme Court in Albers v. County of Los Angeles, 62 Cal.2d 250, 42 Cal.Rptr. 89, 398 P.2d 129,

expressly discussed the doctrine and applied it to allow added compensation for the efforts made. This case does not involve that issue and we express no opinion as to it.

█ Some argument is made that mitigation of damages was not in issue as it was not pleaded, citing SDCL 1967, 31-19-23 (6) in support. That provision requires, among other things, the declaration of taking shall contain:

"(6) Any prior written memoranda or agreement, right of way plans and specifications for the proposed highway, setting forth in detail the access roads, underpasses, overpasses, drainage facilities, and other features as pertain to the adjacent landowner's access to, and means of crossing over and under the proposed highway, together with a description of any additional factors which the state intends to rely upon in mitigation of damages."

This statute requires the proposed construction plans show items of a class similar to those set forth in detail therein so as to advise the owner of the effect the taking will have on his land and its general relationship to access, etc. It does not refer to matters in rebuttal of claims for damages made by the owner such as loss of wells, dams, etc., which will be lost by the taking and were clearly evident therefrom.

The court therefore erred in refusing the requested instruction and the judgment must be and it is reversed.

RENTTO and HOMEYER, JJ., concur.

HANSON, J., dissents.

ROBERTS, J., concurs in dissent.

HANSON, Judge (dissenting).

The trial court properly refused to instruct the jury on a landowner's duty to mitigate damages. The rule is not questioned but it has no application to the facts.

Defendants owned 155 acres of land in Jackson County seven miles west of Kadoka. In this condemnation action the State acquired 19 acres needed in the construction of Interstate 90. The parcel taken runs along the entire southern section line destroying all access to the remaining property from the south. The parcel taken also included a house, an old store, sheds, a spring, two wells, four stock dams, and over 400 trees. Defendants were left with 135 acres of bare grassland without a spring, wells, dams, or trees.

There was no allegation of mitigating matters in the Declaration of Taking by the State at commencement of this action as required by SDCL 31-19-23, nor proof of any matter which would justify an instruction relative to a landowner's duty to mitigate. Apparently the State contends the defendants should have drilled a well on their remaining property in order to reduce or minimize damages. However, it failed to show there was a source of potable water available. A Soils Engineer for the State Highway Commission, testified he drilled three 4 1/2 inch test holes to a depth of approximately 35 feet on the land. The first hole was dry, the second "wet", and the third produced a flow of 1 1/2 gallons of water per hour. In his opinion, the third test hole would provide an adequate well for defendants' needs, if curbed and equipped with a pump. However, other evidence indicated the test holes drilled by the State were all dry at the time of trial and it was not feasible to curb any well producing less than 10 gallons of water per hour. Good water in Jackson County, like gold, was hard to find and the chance of obtaining an adequate well on the remaining property was extremely doubtful. Under the circumstances defendants were under no duty to drill costly test wells in a speculative attempt to find an adequate source of water to minimize damages resulting from the taking and it would be prejudicial to so instruct the jury.

A landowner's duty to mitigate damages is not of general or universal application. This is·reflected in the following explanatory text statement:

"Although an owner is not required to enter upon a doubtful or speculative undertaking, it is his duty, so far as reasonably possible, to attempt to minimize his damages by salvaging what he can from the property taken. Thus, where growing crops are severed or damaged, it is his duty, if he has the opportunity, to care for such perishable property. So also, it is his duty to use all reasonable exertion and steps to protect himself, and avert, as far as practicable, the injurious consequences of the taking. It has been held that an abutting property owner must exercise such care to prevent injury to his property from the cutting down of the grade of an adjoining highway, as may reasonably be expected of a person of ordinary prudence under like circumstances.

"While a landowner is not entitled to recover compensation from the state for damage which he could have avoided, the extent of his duty to minimize the damages depends on the facts of the particular case.

"As a corollary to the rule requiring a landowner to minimize his damages, it is generally held that expenses which he reasonably and in good faith incurs in an effort to minimize his loss are to be taken into account in computing the compensation to be awarded to him in the eminent domain proceeding." 26 Am.Jur. 2d, Eminent Domain, § 155, p. 822. See also Vol. 4. Nichols on Eminent Domain, § 14.22, p. 520.

The cases all support the above text statements and no authority is cited in the majority opinion to the contrary. In other words, the duty to minimize damages particularly applies where some remedial or restorative action will prevent injury, deterioration, damage, loss, or destruction to remaining property such as the duty to harvest growing crops, the construction of dams to prevent flooding, and the like. No such compelling reasons are involved in the present action. The bare grassland would not deteriorate, be harmed, destroyed, damaged, injured, or lost be-

cause the landowners did not actually dig a well. The duty to mitigate damages does not impose a duty to actually restore improvements taken.

The requested instruction implies the landowners had an affirmative duty to do something. In this case, it could only mean they should dig wells. How many exploratory wells would they be obligated to dig? This "duty" portion of the instruction cannot be explained away as an "exercise in semantics", especially to the jury. When a trial is nullified because of failure to give a requested instruction the instruction should, at least, be a clear, correct statement of the law applicable to the facts. The requested instruction goes on to inform the jury that "any expenses which the landowner reasonably and in good faith incurs in an effort to minimize his loss, are to be taken into account in computing the compensation to be awarded him". This would be justified in a proper case where the landowers actually incurred remedial or restorative expenses in an effort to avoid consequential injury, deterioration, damage, or loss to the remaining property. In this case there were no such expenditures and no demand for consequential damages.

The only issue in this case for the jury to consider and determine was the before and after value of defendants' property. The State was not restricted in any manner in its proof or argument as to the availability of water or the cost of producing it on defendants' land. This evidence was all admissible, and was admitted by the trial court, as a reflection on before and after value. From the evidence introduced by both parties the jury could decide whether or not water was available on the land and what it would cost to produce it. They could, and no doubt did, take these important value factors into consideration in their determination of value. It is difficult to see how the State was harmed, restricted, or prejudiced by failure to give an instruction which would only confuse the jury. If given on retrial it will be highly prejudicial to the landowners.

I would affirm.

ROBERTS, J., concurs in dissent.