**William H. VOGT III, Plaintiff,**

v.

**Sheldon ABISH and Mahoney, Cohen & Co., P.C., Defendants.**

**No. 85 Civ. 0088 (CLB).**

United States District Court,
S.D. New York.

May 13, 1987.

William H. Vogt III, Vogt & O'Donnell, White Plains, N.Y., for plaintiff.

No appearance for defendants.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

The Court has reviewed the Report and Recommendation of the Hon. Joel J. Tyler, United States Magistrate, filed herein on

March 27, 1987 ("Report"), and the Objections to the Report by Plaintiff filed April 28, 1987 ("Objections"). Familiarity of the reader therewith is assumed. No objections have been filed by defendants, notice having been duly sent to each defendant by the Court by letters docketed on March 28, 1987. On review, the Court finds as follows.

Defendants have failed to answer the Complaint or move in the requisite period, or indeed to respond at any stage of the proceedings to date, and a Clerk's Certificate of Default was duly entered on June 10, 1985. The matter was referred to the Honorable Joel J. Tyler, United States Magistrate, who conducted a hearing on December 19, 1986 for the purpose of determining the amount of fair and reasonable damages sustained by plaintiff.

Plaintiff presented testimonial and documentary evidence which was fully submitted to the Magistrate on January 13, 1987, and extensively reviewed and evaluated in his Report and Recommendation to this Court. This case, filed January 3, 1985 and remaining open more than twenty-eight months later, would seem to present a record for pendency of an uncontested matter.

The period in which to file objections to this Report closed on April 28, 1987, an extension from the original closing date of April 14th having been granted by the Court at plaintiff's request on April 13, 1987. Yet a letter and affidavit were filed by plaintiff, subsequent to the filing of his Objections, as late as May 5, 1987. The Court notes that these late submissions, regarding the accounting fees incurred by plaintiff's retention of Mr. Koren in this matter, should have been presented to the Magistrate in the normal course of the proceedings before him, and that plaintiff has certainly had ample opportunity to do so. Although Mr. Vogt has apparently been extremely dilatory in this regard, the Court will consider, where appropriate, the new information therein contained.

The Magistrate's Report determined that the plaintiff, by reason of the undisputed wrongful acts of the defendants detailed in the Report as well as the Complaint, was entitled to a total of $28,578.82 in compensatory damages, and $150,000 in punitive damages. Specifically, the Report assesses compensatory damages as follows: $6,000.00 for the January 1981 distribution; $8,897.00, for the deficient 1981 distribution; $1,938.00, for the deficient 1982 distribution; $4,648.39, for the 1981 Federal tax loss; $349.68, for the 1981 New York State tax loss; $5,438.50, for the 1982 Federal tax loss; $407.96, for the 1982 New York State tax loss; $137.90, for the 1983 New York State tax loss; and $761.39, for the 1982 Connecticut tax loss, all incurred by Plaintiff, and to be awarded with interest at the appropriate rates (*see* itemized table appearing in Report at 29–31).

In reviewing the recommendation of the Magistrate, "[t]he district judge is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part." *Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976). The authority and the responsibility to make an informed, final determination remains with the judge. *Id.*

While this Court concurs with and hereby adopts, in large measure, the within Report of the Magistrate and the assessment of damages therein contained, it must disallow the more attenuated damages not proximately caused by the wrongdoing of defendants, as explained below. Moreover, the damage award will be augmented in part, in accordance with plaintiff's Objections.

The Court interprets the sequence of events in connection with the failure to file an amended partnership tax return, described in the Magistrate's Report at 5–6, as a factual finding that on and after March 25, 1985, the date on which plaintiff discovered from his February 22, 1985 inquiry to the Internal Revenue Service ("IRS") that defendants had not filed the amended return as promised, plaintiff, a lawyer, had knowledge of this fact, as well as actual or constructive knowledge of the fact that his claim for refund would be barred by the statute of limitations after April 15, 1985. Yet he did not take it upon

himself to file an amended partnership return, or amended returns for his own taxes. Particularly in view of his past dealings with defendants, and the errors and neglect they had previously demonstrated, the plaintiff knew or should have known that it was not reasonable to rely upon defendants in this regard.

We must assume that the Internal Revenue Service would have dealt honestly and fairly with Mr. Vogt had he filed his own amended return, with or without an amended partnership return, which any partner can sign. We also must assume that the IRS could and would have refunded the additional taxes which had been paid by Vogt as a result of the accounting error made by defendants. Accordingly, Mr. Vogt failed to mitigate his damages as required under New York law or, more accurately, *plaintiff's* failure to file an amended return was itself the proximate cause of the additional monetary loss. His damage award must be reduced accordingly.

■ The measure of damages on tort and fraud claims is the "actual pecuniary loss sustained as a direct result of the wrong." *Accusystems, Inc. v. Honeywell Information Systems,* 580 F.Supp. 474, 483 (S.D.N.Y.1984). Where plaintiffs continue to act or fail to take some action which adds to their damages after being made aware of the fraudulent nature of the representations, they cannot hold defendants responsible for damages after that date. *Cf. Accusystems, Inc.* at 483. A plaintiff must show that he was injured as a direct and proximate result of his reliance on the misrepresentations of defendant. *Lehman v. Dow Jones & Co., Inc.,* 783 F.2d 285 (2d Cir.1986); *Dress Shirt Sales, Inc. v. Hotel Martinique Associates,* 12 N.Y.2d 339, 239 N.Y.S.2d 660, 663, 190 N.E.2d 10, 12 (1963) (plaintiff must show actual pecuniary loss stemming from the fraud).

■ Such a direct, proximate link has not been demonstrated here. On the contrary, the failure of Mr. Vogt to file an amended return upon notice of the accounting errors, being informed that such a return had not been filed by defendants, and knowing that the statute would run on April 15, 1985, was an intervening cause responsible for the loss of his refund for the 1981 tax year. The accounting errors of the defendants in 1981 did not proximately cause the loss occasioned by the expiration of the statute of limitations in 1985. Accordingly, defendants cannot be held responsible for damages for excessive federal and state tax payments which might have been avoided by the reasonable efforts of Mr. Vogt upon being fully informed of the fraud.

Under New York law, there rests on a party seeking damages "the active duty of making reasonable exertions to render the injury as light as possible" *Wilmot v. State,* 32 N.Y.2d 164, 344 N.Y.S.2d 350, 352–353, 297 N.E.2d 90, 91–92 (1973). It is well settled that: "No recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures" *Id.* at 353, 297 N.E.2d at 92; *citing* 25 C.J.S. Damages § 33, p. 698. *See also Mayes Co. v. State of New York,* 18 N.Y.2d 549, 277 N.Y.S.2d 393, 397, 223 N.E.2d 881, 883 (1966) (per curiam). Interpreting the law of the State of New York, our Court of Appeals has held, in *East Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co.,* 490 F.2d 1234 (2d Cir.1973), that:

> "The rule is of general and widespread application that one who has been injured in person or property by the wrongful act or default of another is under a duty to make a reasonable effort to minimize the damages likely to result, and if he does not make such a reasonable effort, he will be debarred from recovering for additional damages resulting from such failure."
>
> *Citing Den Norske Ameriekalinje Actiesselkabet v. Sun Printing & Publishing Ass'n,* 226 N.Y. 1 [122 N.E. 463] (1919).

*See also Pearlstein v. Scudder and German,* 527 F.2d 1141 (2d Cir.1975); *Morgan, Olmstead, Kennedy and Gardner, Inc.,* 585 F.Supp. 245 (S.D.N.Y.1984).

Ordinarily, in the context of a trial, the burden of persuasion as to plaintiff's ability to mitigate rests with the defendant. *See Air et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494–495 (2d Cir.1985). However, the central concern in such cases appears to be the involvement of the court in the determination of damages which by their very nature would invite guesswork, and for which the relevant market information would be more readily available to defendants rather than to the court. For instance, in *Air et Chaleur*, the mitigation defense involved potential assessments of the market value of a "put" on stock and the factual issue of whether and for how much the plaintiffs could have sold the stock in the market after the breach of contract by defendant. Thus the Second Circuit left undisturbed the trial court's finding that defendant had failed to prove the opportunity to mitigate and mitigation. *Id.* at 495.

■ In the instant case, in contrast, we are essentially dealing with a break of causation, where the intervening cause is the failure of plaintiff to take reasonable steps to file his amended return to toll the statute of limitations. It is the plaintiff who must establish his damages at this stage of the proceedings; Mr. Vogt has failed to demonstrate that the additional damages, occasioned by expiration of the statute of limitations, proximately flow from defendants' breach.

Moreover, the purpose of an inquest is to assess and determine the *fair* and *reasonable* damages. The general principle that plaintiff cannot simply fail to take curative action and thereby watch his damages accumulate is equally applicable in the context of an inquest, and the public policy served is no less compelling:

"... this rule restricts the limits of liability for reasons of social and economic policy designed to protect and conserve the welfare and prosperity of the community as a whole.... Such a rule obviously comports with the social policies underlying mitigation of damages that can reasonably be avoided, and it also has the common-sense effect of preventing recovery for 'wounds which in a practical sense are self-afflicted' "

*Morgan, Olmstead, Kennedy and Gardner, Inc.*, 585 F.Supp. 245, 248–249 (S.D. N.Y.1984) (citations omitted).

New York law provides upon a default judgment that, unless plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain", CPLR 3215(a), the court may "make an assessment or take an account or proof...." CPLR 3215(b). We must remember that the failure of defendants to appear does not justify an undue windfall to a plaintiff; the interests of justice must intervene to prevent encroaching upon the rights of defendants by awarding damages which are not proximately caused by their breach and to which plaintiff is accordingly not entitled.

The analysis found in Carmody-Wait's New York Practice provides some insight as to the purpose underlying CPLR 3215(b): "The defendant in such case *may* attend, and may offer affirmative evidence upon the question of damages and in mitigation thereof, ... for the purpose of *assisting the court in fixing the real damages* suffered by the plaintiff" 8 Carmody-Wait 2d § 63:81, p. 741 (emphasis added); *see McClelland v. Climax Hosiery Mills*, 252 N.Y. 347, 169 N.E. 605 (1930). "In other words, the court retains its full power to require, or not to require, proof before it beyond the showing made by the affidavit or complaint, according to the needs of the particular case" 8 Carmody-Wait 2d § 63:83, p. 745–746. *See, e.g., Reynolds Securities, Inc. v. Underwriters Bank and Trust Company*, 44 N.Y.2d 568, 406 N.Y. S.2d 743, 746–747, 378 N.E.2d 106, 109–110 (1978) (an inquest was needed because the amount of plaintiff's damages was not readily ascertainable without consideration by the court of the reasonableness of the time which plaintiff permitted to elapse before making the covering purchase). Thus, the Court must assess and award only the fair and reasonable damages which it determines to have been caused by the defendants' conduct.

The Court notes that the issue of the "absence of an amended partnership return" was addressed by Mr. Vogt in his letter to the Magistrate dated September 25, 1986, at 3–5, which explanations for his failure to so file the Magistrate accepted as satisfactory and "cogent" (*See* Magistrate's Report at B, footnote 3). However, this Court does not find Mr. Vogt's reasons convincing, and concludes that plaintiff has not adequately demonstrated that it was reasonable under these circumstances not to act to limit his damages. The Court will evaluate the three reasons therein proffered by the plaintiff: the lack of the requisite authority, the requisite information, and the requisite expertise.

Plaintiff suggests that he was "not authorized" to sign tax returns on behalf of the partnership: "As Your Honor will readily appreciate, it is one thing for me to have relied on and reported on my personal tax returns the Schedule K–1 figures furnished to me by the defendant accountants, which I innocently assumed to be correct, but it would have been quite a different matter for me personally to attest under penalties of perjury to the accuracy of all the figures appearing on the partnership return and its attachments" (letter at 5). The Court can understand that Mr. Vogt felt uncomfortable signing the partnership returns and attesting to the correctness of the figures appearing therein. However, we are dealing here with a legal concept of the duty to mitigate damages. *Any* partner can sign the partnership return; Mr. Vogt was a partner and was thus authorized under New York law to so sign. The fact that a partner's name is signed on the return shall be prima facie evidence that such partner is authorized to sign the return on behalf of the partnership. 26 U.S.C. § 6063.

■ As for Mr. Vogt's claim that his lack of familiarity with the other partners' Schedules K–1 or the finances of the firm precluded his filing, the Court does not believe that this is necessarily so. Even had Mr. Vogt written "unknown" in the areas of the return where applicable, the filing of such an amended return would have been sufficient to toll the statute of limitations, for one can file almost anything with the Internal Revenue Service and have it be deemed adequate at least for statute of limitation purposes.

Nor can Mr. Vogt claim that this partnership information would not be readily available to him if he chose to request it. Under the Partnership Law of New York, Mr. Vogt is entitled to access to the partnership books, and may inspect and copy any of them, subject to any special agreement between the partners not herein alleged. Partnership L. § 41; *see, e.g., United States v. Onassis,* 133 F.Supp. 327 (S.D.N.Y.1955); *People v. Phillips,* 207 Misc. 205, 137 N.Y.S.2d 697 (1955). In addition, his fellow partners owe to him a legal duty to render on demand "true and full information of all things affecting the partnership", pursuant to Partnership L. § 42. Mr. Vogt does not contend that any demand for records or information was made in his behalf, much less that such demand was rejected by the partnership.

In addition, plaintiff does not allege or demonstrate that any records which were needed or desired by him could not have been obtained from the accounting firm, if that was where they were maintained, by subpoena duces tecum if necessary. Indeed, it is unclear whether there were in fact any specific documents as to which Mr. Vogt's access was restricted.

Plaintiff's final explanation, that he lacked the requisite expertise to file his partnership return, also lacks merit. Mr. Koren, who has been amply demonstrated by plaintiff in the record before the Magistrate to possess a high degree of expertise, was already in the employ of plaintiff and indeed was sufficiently familiar with the books and records of the partnership to have discovered the very errors of defendants which would have been the subject of such an amended return. It is clear that Mr. Koren was quite capable of filing an amended return.

■ Nor will this Court assume that IRS proceedings have now become so arcane that a member of the bar is incapable of reading the official directions and filing a

return. It has always been the stated policy of the IRS that the lay person be given the opportunity and the necessary written instructions to file his or her own tax returns, including partnership returns. Numerous instruction booklets and guides have been issued for this purpose. While the statutory and financial complexities that our unfair tax code often involves are irritating, they are certainly not impossible. There is, after all, no requirement that a paid tax return preparer hold an accounting or other license, and most do not. The Court concludes as a matter of law that Mr. Vogt could have filed the amended tax returns himself.

Accordingly, the computation of damages sustained by plaintiff must be adjusted to omit the 1981 Federal income tax loss, determined by the Magistrate to be $4,648.39, the 1981 New York State income tax loss of $349.98, and the accompanying interest thereto.

It should be noted that the causation issue discussed above has no bearing on the damage award in connection with the tax returns filed by plaintiff for the 1982 and 1983 tax years, because these losses were not affected, and could not have been prevented, by the March 1985 notice. As discussed in the Magistrate's Report at 14–16, had the Schedule K–1 tax return material furnished to plaintiff by defendants in early 1982 reflected the $15,127 capital loss, plaintiff would have taken steps to incur offsetting short-term capital gains, as he was in a position to do, and would have obtained tax-shelter income. It is reasonable to assume Mr. Vogt could and would have fully utilized the carry-over loss had he possessed this information in *1982*.

The Court also declines to disturb the Magistrate's finding of $150,000 punitive damages in this regard. Plaintiff's claim for punitive damages was based primarily upon two wrongful acts of the defendants: the deliberate exclusion of plaintiff from the 1982 distribution and the failure of defendants to file an amended partnership return with corrected Schedules K–1. The fact that defendants neglected to file the return still provides a basis for punitive damages, as found by the Magistrate at 23–29, despite plaintiff's notice on March 25, 1985 of defendants failure to so file, because the defendants did falsely represent to Mr. Vogt that they would take this action, and provided him with a spurious purported copy of an amended but unfiled Schedule K–1 soon after commencement of this litigation, with a note which was misleading in its suggestion that the amended return would be filed. Moreover, plaintiff received notice of the failure to file from the Internal Revenue Service and not from the defendants, who failed to respond to his legitimate inquiries. We agree with the Magistrate's assessment that where, as here, the accountant is apprised of an accounting error, and promises his client to take steps to correct or mitigate the error, but deliberately fails to take such steps, such behavior is grossly negligent and reckless, thereby warranting punitive damages.

### Plaintiff's Objections

In his Objections to the Report of the Magistrate, plaintiff contends that the recommended award of punitive damages is inadequate, in part because the Report failed to impute the knowledge contained in the "smoking gun" memorandum, Exhibit 13, to defendants Abish and the accounting firm as a whole (Report at 7, 21–23; Objections at 14–17). The Court will infer that this memorandum, signed by the mysterious "NS", was in fact reviewed by his or her supervisors in the firm. As agent, the actions and knowledge of "NS" must be imputed to the firm and its partners, including Mr. Abish. Such imputation is particularly reasonable where as here there is likely to have been direct supervision (Objections at 15, Tr. 231–32).

Indeed, under broad agency principles, liability may be imposed on a corporation for acts of its agents, contrary to orders and without authority, express or implied, merely because they were committed in the course of the corporation's business and were within the scope of the agent's employment. *See United States v. Uniroyal, Inc.*, 300 F.Supp. 84 (S.D.N.Y.

1969); *see also District 65, UAW v. Harper and Row Publishers, Inc.,* 576 F.Supp. 1468, 1483 (S.D.N.Y.1983).

Accordingly, this Court concludes that Exhibit 13 establishes that the defendants were aware of the $20,000 posting error and made an adjusting entry on April 2, 1982, nearly six weeks prior to the May 14, 1982 distribution. However, upon considering this inference, as well as the restatement of defendants' misconduct and the arguments offered by plaintiff in support of a larger damage award, the sum of $150,000 assessed by the Magistrate appears to be adequate punitive damages and the Court declines to change this figure.

Mr. Vogt acknowledges that the Report is "fully in accordance with the approach plaintiff set forth in his January 1986 written submissions" as to the computation of damages for the excessive 1982 taxes paid by plaintiff; however, plaintiff now presents, for the first time, an "alternative approach" for calculating the carry-over loss (Objections at 7–9). The Court will not entertain a new method which should have been presented in the first instance to the Magistrate while he was making his extensive calculations. We conclude that these figures as presented in the Report are satisfactory and correct.

Plaintiff objects to the Magistrate's treatment of the 1982 and 1983 distributions for the purpose of determining interest for the 1982 deficiency. The Report recommended that the 1983 excess of $1,230 be set off against the 1982 deficiency of $3,168, with prejudgment interest on the resultant $1,938 to be calculated from May 14, 1982, the date on which the earlier distribution should have been received (Report at 11). Plaintiff correctly observes that Mr. Koren had separately set forth as credit the excess portion of the 1983 distribution (para. 22 of his Declaration, Exhibit 37, p. 14), that the accounting justification for that differing treatment is not apparent, and that the effect of this alternate approach is to deprive plaintiff of 16 months of prejudgment interest on a part of the 1982 distribution to which he was entitled, from its May 14th payment date until the August 24th date of the 1983 distribution (Objections at 6).

While this difference in treatment amounts to only a small sum, the Court will adopt the approach more favorable to plaintiff. Plaintiff is entitled to prejudgment interest on his claims pursuant to New York CPLR § 5001(b) from "the earliest ascertainable date the cause of action existed ..." *Quintel Corp. v. Citibank, N.A.,* 606 F.Supp. 898, 913–914 (S.D.N.Y.1985). Since plaintiff's method of calculating such interest refers back to the earlier distribution as the date on which interest begins for the larger portion of the deficiency, and the claim indisputably arose from the time of that May 14th distribution, the Court adopts plaintiff's figure as more in accordance with the equitable purpose of CPLR § 5001(b).

Accordingly, prejudgment interest will be calculated first on the 1982 deficiency of $3,168, for the period from May 14, 1982 to August 24, 1983, with a set-off of $1,230, the 1983 excess distribution, from that figure. Prejudgment interest from August 24, 1983 to the time of judgment will then be determined on the remaining deficiency.

■ Plaintiff requests leave to reopen the record and submit an affidavit from Mr. Koren "attesting to the matters the Magistrate considered to be lacking", referring to the Magistrate's decision not to allow plaintiff a damage award for the accounting services of Mr. Koren, in part because "nowhere does Vogt set forth Koren's rate of compensation or detail the accounting services rendered" (Objections at 4–5; Report at 18). Although plaintiff has been dilatory in submitting this fee information, as noted above, the Court sees no reason not to grant the requested accounting fees as presented in the Affidavit of Paul M. Koren, with accompanying invoices, duly filed with this Court on May 5, 1987. The listed fees and expenses, which total $12,223.00, constitute compensatory damages proximately caused by defendants' negligence and breach of contract. Prejudgment interest will be computed for

these accounting expenses from thirty days following the respective dates they were invoiced.

In all other respects the Court hereby adopts the Magistrate's Report and Recommendation without modification. Any objections of the plaintiff not specifically referred to herein are rejected.

COMPUTATION OF DAMAGES

| | ELEMENT OF DAMAGES | PRINCIPLE AMOUNT | INTEREST PERIOD | RATE | PREJUDGMENT INTEREST TO 5/13/87 |
|---|---|---|---|---|---|
| 1) | Federal Tax 1982 | $ 5,438.50 | 4/15/83– 5/13/87 | 9.0% = | $1995.41 |
| 2) | Connecticut Tax 1982 | $ 761.39 | 4/15/83– 5/13/87 | 9.0% = | $ 279.36 |
| 3) | New York Tax 1982 | $ 407.96 | 4/15/82– 8/31/83 | 9.1% | |
| | | | 9/1/83– 2/29/84 | 9.1% (CD) | |
| | | | 3/1/84– 2/28/86 | 10.0% (CD) | |
| | | | 3/1/86– 2/28/86 | 7.9% (CD) | |
| | | | 3/1/87– 5/13/87 | 6.0% (CD) | |
| | | | | = | $ 182.70 |
| 4) | New York Tax 1983 | $ 137.90 | 4/15/84– 2/28/86 | 10.0% (CD) | |
| | | | 3/1/86– 2/28/86 | 7.9% (CD) | |
| | | | 3/1/87– 5/13/87 | 6.0% (CD) | |
| | | | | = | $ 44.29 |
| 5) | Jan. 1981 Distribution | $ 6,000.00 | 1/1/81– 6/24/81 | 6.0% | |
| | | | 6/25/81– 5/13/87 | 9.0% | |
| | | | | = | $3,348.80 |
| 6) | Deficient 1981 Distribution | $ 8,897.00 | 1/1/82– 5/13/87 | 9.0% = | $4295.12 |
| 7) | Deficient 1982 Distribution | $ 1,938.00 | | = | $1012.74 |
| | | ($ 3,168.00 | 5/14/82– 8/24/83 | 9.0% | |
| | | $ 1,938.00 | 8/24/83– 5/13/87 | 9.0%) | |

Accounting Services

| | ELEMENT OF DAMAGES | PRINCIPLE AMOUNT | INTEREST PERIOD | RATE | PREJUDGMENT INTEREST TO 5/13/87 |
|---|---|---|---|---|---|
| 8) | Invoice 2/25/83 | $ 1,686.00 | 3/25/83– 5/13/87 | 9.0% = | $ 627.33 |
| 9) | Invoice 9/26/83 | $ 5,180.00 | 10/26/83– 5/13/87 | 9.0% = | $1652.77 |
| 10) | Invoice 3/21/86 | $ 2,217.00 | 3/21/86– 5/13/87 | 9.0% = | $ 228.68 |
| 11) | Invoice 12/22/86 | $ 3,140.00 | 1/22/87– 5/13/87 | 9.0% = | $ 85.94 |

| | | | | |
|---|---|---|---|---|
| TOTAL COMPENSATORY = | $ 35,803.75 | | | $13,753.14 |
| 12) PUNITIVE = | $150,000.00 | | | |

TOTAL DAMAGES PLUS INTEREST = $199,556.89

The Clerk shall enter judgment in favor of Plaintiff and against Defendants jointly and severally for $35,803.75 in compensatory damages, $13,753.14 in prejudgment interest, and $150,000 in punitive damages, for a total of $199,556.89.

So Ordered.